## THE WESTERN UNION TELEGRAPH COMPANY v. BOREN PROCTER.

### No. 378.

1. **Telegraph Company—Damages for Delay.**—R. eloped with plaintiff's daughter, aged 15 years, going towards the county seat to procure license and be married. Plaintiff at once telegraphed the county clerk, stating the girl's age and forbidding the issuance of license, but through negligent delay in the delivery of the message it did not reach the clerk until after license had been issued and the parties married. *Held*, that plaintiff was entitled to recover of the telegraph company damages for the loss of his daughter's services up to the age of 18, and also for the mental distress involved.

2. **Same—Mental Anguish of Wife.**—There being no evidence that the telegraph company had notice at the time the message was sent that plaintiff then had a wife, he was not entitled to recover damages for injury to the wife's feelings resulting from the company's delay and the marriage of the daughter.

3. **Common Law Marriage.**—A "common law marriage" consummated in Texas without statutory license or ceremony, is not valid.

APPEAL from Denton. Tried below before Hon. D. E. BARRETT.

Late in the evening of September 28, 1890, appellee's daughter, Annie Procter, who was then 15 years of age, and residing with her parents near the town of Sunset, eloped from their home with Lum Rymer, the couple going towards Decatur, the county seat of Wise County, for the purpose of procuring license there and being married. Shortly afterwards, appellee, learning of their departure and purpose, promptly telegraphed the county clerk at Decatur, stating the girl's age and forbidding

the issuance of license; informing the telegraph operator at Sunset of the urgency of the matter, and his objections to such marriage. The message was at once transmitted by wire to Decatur, but through the negligence of appellant's agents there was not delivered to the clerk until next day. Meanwhile Rymer and the daughter, reaching Decatur about midnight, and having procured license from the clerk, and the services of a minister, were then and there duly married.

Appellee brought this suit against the telegraph company, setting out the above facts in his petition, and further alleging, that his daughter was at the time of such marriage but a child in development and experience, and wholly unfit for the marriage state; that Rymer was but a shiftless and irresponsible youth, without property, experience, or any qualification for entering into matrimony or properly caring for a wife; that plaintiff and his wife, by reason of this marriage of their daughter, were greatly humiliated, mortified, and chagrined, and have suffered great mental anxiety, to plaintiff's damage $1700; that the services of the daughter were reasonably worth to plaintiff $250; and that if the message had been delivered by defendant's agent to the county clerk, as it should have been, the clerk would not have issued the license, and plaintiff's daughter would not have been married to Rymer. There was a verdict for plaintiff for $750.

The appellate court's conclusions of fact are as follows:

"We find no evidence in the record that appellant had notice when the telegram was sent that plaintiff's wife would be in any way affected by the failure to promptly deliver the message. Lum Rymer was shown to have been about 25 years old at the date of the message; and the allegation 'that plaintiff's daughter was at the date of her marriage, in age, development, and experience, but a mere child, and wholly unfitted for the married state,' was perhaps a little overdrawn. In other respects, the material allegations of the petition were sustained by the evidence."

*Stanley, Spoonts & Meek*, for appellant.—1. Plaintiff's petition does not show any right in him to recover damages against defendant by reason of its failure to promptly send and deliver said telegraphic message. Rev. Stats., art. 2858; Burns v. Wilson, 18 Texas, 367; Rowell v. Tel. Co., 75 Texas, 26; Le Gierse v. Kellum, 66 Texas, 242; Holland v. Beard, 42 Am. Rep., 360.

2. The marriage of a female over 14 years of age is valid in Texas, even though said marriage be against the expressed authority of parents. 14 Am. and Eng. Encycl. of Law, 487, and cases cited.

3. Title 50, chapter 1, of the Revised Statutes, providing for the issuance of marriage license and the solemnization of the rites of marriage by virtue thereof, is directory and cumulative, and does not prohibit the parties from entering into a marriage contract in any manner deemed valid

at common law; and the plaintiff's daughter being over 14 years of age,. was fully authorized and empowered to contract a common law marriage without the issuance of the marriage license, and the plaintiff could not have prevented the marriage of his daughter by preventing issuance of the license.    14 Am. and Eng. Encycl. of Law, 485; Missouri v. Bittick, 11 Law Rep. Ann., 587; Thomas v. Holtzman, 7 Mackey, 62; Clayton v. Wardell, 4 N. Y., 230; Askew v. Dupree, 30 Ga., 173; Port v. Port, 70 Ill., 484.

4. The rule is well settled, that "a marriage good at the common law is good notwithstanding the existence of any statute on the subject, unless. the statute contains express words of nullity." 1 Bish. on Mar. and Div., 283. An irregular marriage is valid for all purposes.    Hargroves v. Thompson, 23 Miss., 211. The damage which the appellee has sustained resulted from a legal act, the effect of which was to displace his right to the services of his daughter; the damage is therefore damnum absque in-juria, and this action is not maintainable.

*R. E. Carswell*, for appellee.—1. Appellee had the right to prevent. his daughter, under the age of 18 years, from consummating a clandes-tine and improper marriage, and the allegations of his petition show that. he was in the pursuit of this right when he made the contract with ap-pellant.    Rev. Stats., arts. 2840, 2841; Cool. on Torts, 237; Schoul. on Dom. Rel., sec. 30.

2. If appellant had the right to withhold his consent to the issuance of the license, and he was deprived of that right through appellant's breach of contract, he is entitled as compensation for said breach to all that he lost thereby, one item of which was the services of his daughter till she married or became of the age of 18 years.    Martin v. Tel. Co., 1 Texas Civ. App., 143; Tel. Co. v. Brown & Co., 84 Texas, 476; Tel. Co. v. Sheffield & Son, 71 Texas, 570.

3. Mental anguish was a proper element of damage under the allega-tions of the petition.    Tel. Co. v. Broesche, 72 Texas, 658; Tel. Co. v. Simpson, 73 Texas, 422; Tel. Co. v. Richardson, 79 Texas, 652; Thomp. on Law of Elec., 378, 379.

4. The fact that the marriage was a complete emancipation from par-ental control, or that a marriage without a license would have been valid,. is wholly immaterial, as appellee's petition makes a case where the pur-pose of the elopement is to contract a statutory marriage, and if a license could not have been obtained no marriage would have occurred, and the very validity of the marriage and consequent emancipation of the daugh-ter tends to make out the case.

STEPHENS, ASSOCIATE JUSTICE.—If the case stated in the petition was. actionable, the first, second, third, fourth, fifth, eighth, ninth, and tenth assignments of error must be overruled.

The solution of this question involves the validity of a common law marriage in this State. That is, has a girl over 14 and under 18 years of age the legal right to marry without the parent's consent, and without statutory license or ceremony? We are of opinion that she has not. Our Court of Appeals so ruled in the case of Dumas v. The State, 14 Texas Cr. App., 464. The decided weight of authority however, outside of this State, seems to support the opposite conclusion. Hutchins v. Kimmell, 31 Mich., 126 (18 Am. Rep., 164), and cases there cited; Holland v. Beard, 59 Miss., 151 (42 Am. Rep., 360); The State v. Bittick (Mo.), 11 Law Rep. Ann., 587. *Contra:* Estate of McLaughlin (Wash.), 16 Law Rep. Ann., 699, where the authorities are reviewed at length; Elliott v. Elliott (Wis.), 10 Law Rep. Ann., 568. But we are of opinion that the prevailing American doctrine has never been the law in Texas.

The latest cases reaffirming that doctrine seem to place it upon the ground that statutes prescribing a license and designating the persons authorized to celebrate the rite of matrimony, in the absence of an express declaration that a marriage otherwise performed is void, are merely directory, and not intended to abolish the pre-existing common law right. Here, unlike most other States of the Union, legislation on that subject preceded the introduction of the common law, which was first introduced by act of the Congress of the Republic in 1840, and then only in a modified form, to-wit, as the rule of decision, and in so far only as it was not inconsistent with the acts of the Congress of the Republic. Pasch. Dig., art. 978. The acts of Congress passed in 1837 were then in force, and, we think, excluded the idea of a common law marriage. Pasch. Dig., arts. 2461, 4662, 4662a, 4663, 4664, 4666, 4667, 4671, 4672.

Though the bond marriages of that early day were afterwards sustained on account of the impossibility of celebrating the rite of matrimony in accordance with the prescribed forms, the ministers of the established religion being inaccessible; still so strong was the conviction that conformity to the prescribed method was essential to a valid marriage, that by the ordinance of 1836 and the acts of the Congress of 1837 as well as of 1841, these marriages were expressly validated, thereby implying that none others were excepted from the general rule. It seems very clear that the Congress of the Republic regarded such marriages as null, though possessing all the requisites of a common law marriage. Sapp v. Newsome, 27 Texas, 537; Nichols v. Stewart, 15 Texas, 232; Lewis v. Ames, 44 Texas, 338.

The policy of regulating the social status of marriage by a prescribed and uniform method has been steadily adhered to ever since. Rev. Stats., 2838–2842, 2844–2846; Penal Code, arts. 265, 324, 328. This legislation, from the beginning—for now more than a half century—has received, by common consent and universal custom in conforming thereto, a practical construction which would seem to exclude as inapplicable and inconsist-

ent, an unwritten law founded upon the immemorial custom and usage of the ancient Britons.    It never was the intention, we think, to adopt this usage in the Republic or State of Texas; and it should be now rejected as an unwarranted innovation.

If then the right to marry without license on the part of appellee's daughter did not exist, he had a cause of action against appellant, if the license was obtained through its fault.

This leads to the question of the measure of his recovery.    We approve the court's charge in submitting as an item of damage the loss of her services up to the age of 18.    We think, also, that he was entitled to recover for the mental distress involved.    We can not distinguish this case, in principle, from the case of Telegraph Company v. Stewart, 66 Texas, 584, and that line of decisions.    The solicitude of a parent for the welfare of an only daughter of tender years, committed to his care both by nature and law, is certainly not less substantial than the affection of one brother for another.

We are of opinion, however, that damage on account of injury to his wife's feelings was not recoverable in this case, on the ground that the record contains no evidence that such a result was within the contemplation of the parties when the message was sent.    So much of the eleventh assignment, therefore, as complains of the charge in submitting to the jury the mental distress and anxiety on the part of both plaintiff and his wife, because not within the contemplation of the parties, must be sustained. There was no evidence that appellant knew he had a wife.    Tel. Co. v. Carter, 85 Texas, 580; Tel. Co. v. Kirkpatrick, 76 Texas, 217; Elliott v. Tel. Co., 75 Texas, 18.

The other assignments of error are not believed to be well taken.

For the error indicated, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered February 7, 1894.