## WESTERN UNION TELEGRAPH CO. v. LANDRY. †

(Court of Civil Appeals of Texas. Feb. 1, 1911. Rehearing Denied March 1, 1911.)

1. APPEAL AND ERROR (§ 1097*)—LAW OF CASE —SUBSEQUENT APPEAL.

Where the Court of Civil Appeals reversed a judgment upon a stated theory, and its judgment was reversed by the Supreme Court, that theory must be deemed to have been repudiated and the law of the case established to the contrary, though the opinion of the Supreme Court did not discuss it, and hence that point cannot be again considered by the Court of Civil Appeals on a subsequent appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4364; Dec. Dig. § 1097.*]

2. TELEGRAPHS AND TELEPHONES (§ 67*) — FAILURE TO TRANSMIT MESSAGE—DAMAGES.

Where a telegraph company failed to transmit a message sent by a daughter to her father, which message was: "Gus very low. Send some one to me"—the company had notice that some one in close relationship to the sender of the message was expected and that her father might be one of them.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 65; Dec. Dig. § 67.*]

3. APPEAL AND ERROR (§ 1053*) — REVIEW — HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action against a telegraph company for failure to transmit a message which stated: "Gus very low. Send some one to me"—if it was error to permit plaintiff to testify that she

---

wanted some of her kinfolks, brothers, sisters, or some of the family, in that such testimony placed too broad a construction on the notice imputed to defendant as to the object of the message, such ruling was harmless error where it appeared that only her father and two brothers might have come, and the court charged the jury that recovery depended on whether any one of them would and could have come.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

4. APPEAL AND ERROR (§ 274*)—PRESENTATION OF GROUNDS OF REVIEW IN LOWER COURT—EXCEPTIONS.

Where a witness testified in a deposition to certain facts, and no exception was taken, an exception to a later statement whereby he affirmed the truth of his former testimony, is insufficient to allow the former testimony to be questioned on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1631; Dec. Dig. § 274;* Trial, Cent. Dig. § 258.]

5. APPEAL AND ERROR (§ 1051*) — REVIEW — HARMLESS ERROR—QUESTION OF EVIDENCE.

Where a telegraph company delayed the transmission of a message for more than three hours, and the following day transmitted a message between the same points in less than an hour, the admission of testimony that it only took eight minutes to receive a response· from messages sent ·between two other points which were on the same line and nearly as far apart, was harmless where this fact was uncontroverted, and the delay of the first message was not explained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

6. TELEGRAPHS AND TELEPHONES (§ 66*) — ACTIONS—EVIDENCE—ADMISSIBILITY.

In an action against a telegraph company for delay in transmitting a message, which had to ·be relayed to a distributing station, and from thence sent to another distributing station where it was again relayed to its destination, the distance between the distributing stations being greater than the distance from either of the receiving stations to its respective distributing station, evidence of the time it took . to transmit a message between the two distributing stations was admissible.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 62; Dec. Dig. § 66.*]

7. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In an action against a telegraph company for delay in the transmission of a message, it appeared that there was an unwarrantable delay, although the message was promptly delivered after being received. The jury was charged to find for plaintiff if defendant was negligent in failing to transmit and deliver the message, and also charged to find for defendant if defendant properly transmitted the message. *Held* that, though the prompt delivery was admitted, it is impossible, when considering the whole charge, to believe that the jury understood that it submitted to them the issue of prompt delivery, and hence delay being clearly shown this instruction was not misleading.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by Ida Landry against the Western Union Telegraph Company. From a judg-

ment for plaintiff, defendant appeals. Affirmed.

Webb & Goeth, for appellant. Cocke & Cocke, for appellee.

JAMES, C. J. This cause was here once before on appeal, and was remanded to the trial court by the Supreme Court. W. U. Tel. Co. v. Landry, 108 S. W. 461 (Court of Civil Appeals); 102 Tex. 67, 113 S. W. 10 (Supreme Court). In these opinions the nature of the case is sufficiently stated.

At the recent trial, plaintiff, by amended pleading, abandoned her claim for exemplary damages, and alleged actual damages on account of mental anguish resulting to her from the failure of defendant to promptly transmit and deliver the telegram in question, which resulted in her not having her father, Sam Rountree, Sr., or one of her brothers, Sam and Joe, with her in time to aid and comfort her in connection with the burial, and the ·preparations for the burial, of her husband, Gus Landry. Defendant pleaded certain exceptions, a general denial, and alleged in substance that plaintiff's object in sending the telegram was to secure funds to embalm the body, and that,such funds could have been sent her, or that she could have embalmed the body without the presence of her relatives, and her failure to do so was due to her own carelessness and indifference, and that if the body had been embalmed, it would have been in a condition to have been shipped to Louisiana when her brother arrived, in which event she would not have been damaged. The telegram sent by plaintiff read: "Sam Rountree, Schriever, La. Gus very low. Send some one to me. Answer." We conclude as facts supported by evidence that the agent receiving the message both knew and was charged with knowledge of its nature and urgency; that defendant was negligent in its transmission; that the result of such negligence was that she had no one of her immediate family, contemplated by the terms of the message, with her during the preparations for the burial of her husband, and at his burial; and that, but for such negligence, one of them would have been there; and that she suffered mental anguish in said respect as the direct consequence of such negligence.

We shall consider, first, the twelfth assignment of error, which is that the court erred in refusing to direct a verdict for defendant, because the undisputed evidence shows that Mrs. Landry's sole and only desire in sending the message was to secure funds with which to embalm the body of her husband and thereby enable her to arrange for its transportation to Louisiana, and therefore the damage complained of in her petition was not within her contemplation at the time of filing the message for transmission. It was

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

134 S.W.—54

upon this very ground we reversed the former judgment and rendered a judgment for appellant. The Supreme Court did not agree with us. Although the Supreme Court did not discuss the question, in the opinion it delivered, it remanded the cause, and this must have been done upon the theory that regardless of such desire and object on her part, defendant would be responsible for the mental anguish, which plaintiff sustained as the direct result of defendant's failure to properly transmit the message, in connection with the circumstances attending the burial of her husband at Center Point in the absence of her said relatives. We, therefore, overrule the assignment, and also the thirteenth, fifteenth, seventeenth, and eighteenth assignments of error.

The assignments of error Nos. 1, 2, 3, 5, 6, 7, and 8 all relate to substantially the same matter, which is indicated by this proposition: "The Telegraph Company will only be held liable for such damages as it may reasonably be expected to foresee under the circumstances at the time the contract was made, and unless it had notice of the fact that plaintiff's father was expected to come in response to the message, it cannot be held liable for the damages sustained on account of his absence." Appellant's idea seems to be that the message being to her father stating, "Send some one to me," the company had no notice that the father was included among those who would be expected to come. The evidence was that the father or a brother would have started from Schriever on the train passing there in the forenoon of March 1st had the message been delivered that morning, as it should have been, in time to have enabled them to take that train. The above assignments seem to concede that defendant would have contemplated the coming of the brother, but not the father.

We in effect passed upon this question on the former appeal, in the following language: "In the present case the message from Ida Landry was: 'Send some one to me.' Defendant had notice that she was communicating to one who was near to her and had an interest in her welfare, and that she wanted some such person sent to her at once, and had notice that a failure to promptly forward the message would result in depriving her of the presence of some such person in connection with the death of Landry. We think it was immaterial that the message did not designate the relationship of the person summoned. Evidently, from the telegram, the sender herself did not know who would come. No one would suppose from it otherwise than that it was addressed to a person in close relationship to the sender, and that it sought to bring one in like relationship, one that would naturally be of service and comfort to the sender." Defendant had notice that some person in close relationship to plaintiff that could come was expected to come, and this included the father. The assignments are overruled.

The 4th assignment complains of plaintiff's statement that she wanted "some of her kinfolks, brothers, sisters, or some one—some of her family," with her on the occasion of the death and burial of her husband, for the reason, first, that having alleged that her father, or one of her brothers, Sam or Joe, would come in response to the telegram, she should not have been permitted to testify that she wanted some of her kinfolks, brothers, or sisters, to come; and, second, because defendant could not reasonably have foreseen that she desired or expected her father. Inasmuch as the telegram implied, and was broad enough to include, such persons, her said testimony really added nothing. Besides, the only persons who it was shown would and could have come, was the father, or her brothers, and the court by its charge made the case depend on whether or not the father or the brother Joe could and would have come.

The ninth assignment should be overruled. It is that defendant objected to, but the court allowed to be read, the following part of witness Rountree's deposition: "I am positive as to all statements made by me in answer to these questions regarding what other members of my family would have done on the 1st of March, 1905, with reference to going to Texas." The objection was that the statement with reference to other members of the family was general; and that the inquiry should be confined to the question as to whom he would have sent in response to the telegram, and the names of such persons should be given, the company having no notice as to who might be a member of the family.

The testimony that was objected to was simply an assertion that the witness was positive as to some statements he had made in his testimony. The objection was not to said statements, and the question of their admissibility cannot be inquired into under such an assignment as this. Besides, the brief does not attempt to inform us as to what such statements were. If testimony is introduced, its admissibility may be questioned by exception and assignment, but not by an exception to a subsequent declaration of the witness whereby he merely asseverates the truth of his testimony.

The tenth assignment complains of testimony of the witness Strauss, who stated: "Have lived in San Antonio 24 years. I am engaged in the wool and hide business. In conjunction with my business I have occasion to send telegrams over the lines of the Western Union Telegraph Company. I had occasion to do so about the 1st of March, 1905—that is, I suppose we did; we handle messages every day in the week. We have had occasion to send messages from San Antonio to Louisiana, and did have at that

time. We did a great deal of telegraphing at that time. We did receive responses from the messages sent from San Antonio to New Orleans in from four to seven or eight minutes.

There was testimony that the agent at Ganahl (the station at and near Center Point) received the message about 7:25 o'clock a. m. of the 1st, and got it off to San Antonio at 8:27 o'clock. Defendant's manager at San Antonio testified that in transmitting death messages, announcing trouble or severe sickness, it is the effort and desire of the company to send it and give such messages precedence over ordinary commercial business. The agent at Ganahl and said manager disclaimed any knowledge of what the company's records showed, if anything, concerning the time this message was received in San Antonio, Galveston, or New Orleans. The Ganahl agent admitted, however, that the reply to the message in question showed that it was filed at Schriever at 9:30 a. m. of the 2d, and reached Ganahl at 10:20 a. m., thus consuming less than one hour. Appellant does not in connection with this assignment undertake to show or to claim that there was any testimony whatever contravening what the above indicated, or explaining why the message in question did not , reach Schriever sooner and in time for the addressee or some one to take the train that morning which passed that point at 10:14. We take it that all the evidence on the subject goes to show that there was unnecessary delay in the transmission, and that therefore the testimony of Strauss, if improper, was not prejudicial. But we look upon his testimony as proper evidence. It is true it did not profess to state the time for messages to go from Ganahl to Schriever, and states only the time for messages to go from San Antonio to New Orleans. The telegram was sent direct from Ganahl to San Antonio, the distributing office, a distance of about 60 miles, and from there it was sent to New Orleans, La., and from there it went back to Schriever, La. The relays consumed some of the time, but what evidence there is on the subject is indefinite though it indicates that this time was not considerable. The time it took a message to be transmitted from Ganahl to San Antonio or from New Orleans to Schriever, would evidently not take more time than a transmission from San Antonio to New Orleans. Hence evidence of the time within which common messages would go between San Antonio and New Orleans was relevant and material to the issue. We may refer, in this connection, to the case of W. U. Tel. Co. v. Lydon, 82 Tex. 366, 367, 18 S. W. 701.

The twenty-third assignment is based upon a fact as undisputed, which was not of that character.

The fourteenth assignment of error com-plains of the charge "because the jury were instructed to find for the plaintiff if the defendant was guilty of negligence in failing to promptly transmit and deliver the message," etc., when it was admitted on the trial that there was a good delivery after the message reached Schriever, the charge thus proceeding upon the theory that there may have been negligence in both transmitting and delivering the message, and ignores the admission.

In order for such a matter to reverse a judgment, it ought to appear to be misleading. The charge was brief. In the first clause it authorized a verdict for plaintiff if, among other things, "the defendant failed to promptly transmit and deliver the message." In the second clause it directed a verdict for defendant if defendant promptly transmitted the message. It being formally admitted at the trial that there was no fault in delivering the message after it reached Schriever, it is wholly improbable and unreasonable, taking the two clauses of the charge together, to consider that the jury understood the charge as submitting to them that fact as an issue, or that they based the verdict on a finding contrary to the admission. The first clause—the one complained of—was, if anything, unfavorable to plaintiff, and if the verdict had been for defendant plaintiff might be here complaining of the charge in this respect, for better reason.

Besides this, it seems to us that the testimony leaves no doubt that there was unreasonable delay in the transmission of this message, and that really the only issue of fact was whether or not one of plaintiff's family could and would have taken that morning's train, had it not been for such delay.

The charge referred to by the sixteenth assignment was correctly refused. Also the charge referred to in the nineteenth and twentieth assignments. The matter pertaining to them has been sufficiently discussed.

Affirmed.