MRS. HENRY HERRING v. WESTERN UNION TELEGRAPH COMPANY.

No. 2458. Decided April 19, 1916.

**1.—Telegraph—Death Message—Notice of Relationship.**

In order to hold a telegraph company liable for damages to relatives of deceased from being prevented from attending the funeral by delay in delivering a death message, it is not necessary that the relationship be disclosed by the message itself. Oral information given to the agent on his receiving the message for transmission is sufficient. (P. 81.)

**2.—Same—Putting on Inquiry.**

Where the sender of a death message notified the telegraph operator receiving it for transmission to rush delivery and that its purpose was to secure at-

tendance of children and friends of deceased at the funeral, such information was sufficient to render the company liable for damages to a daughter of deceased, for whose benefit it was sent, by being prevented from attending through negligence in its transmission and delivery. Such notice was sufficient to put the company on inquiry as to her relationship, if fuller information was desired; and its seems that the mere fact that it was a death message was sufficient. (Pp. 81, 82.)

Error to the Court of Civil Appeals for the Eighth District, in an appeal from Taylor County.

Mrs. Herring sued the Western Union Telegraph Company and recovered judgment. This was reversed and rendered for defendant on its appeal (146 S. W., 699) and plaintiff obtained writ of error.

*B. A. Cox, J. F. Cunningham,* and *Ramsey, Black & Ramsey,* for plaintiff in error.—The message read in evidence, considered in connection with all the facts in the record, was sufficient to put the company upon notice that such message was intended for the benefit of a child of the deceased, and that such child would be expected to act upon the information contained therein, and it is immaterial that the name of the child was not given. If the evidence is not sufficient to put the company upon notice that the message was intended for a child of the deceased, it is sufficient to put the company upon notice that it was intended for a child or a friend, and the telegraph company, having failed to make inquiry as to who in fact it was intended for, is charged with notice that it was intended for a child and that that child. Mrs. Herring, would be expected to act upon the information contained in the message. Herring v. Western Union, 127 S. W., 882; Western Union v. Adams, 75 Texas, 531; Western Union v. Landry, 134 S. W., 848; Western Union v. Russell, 31 S. W., 698; Western Union v. Hankins, 110 S. W., 543; Western Union v. Stubbs, 43 Texas Civ. App., 132, 94 S. W., 1083; Western Union v. Grigsby, 29 S. W., 406; Western Union v. Bell, 90 S. W., 714; Potts v. Western Union, 82 Texas, 545, 18 S. W., 604; Western Union v. Feegles, 74 Texas, 537; Western Union v. Moore, 76 Texas, 66; Western Union v. Coffin, 88 Texas, 94; Western Union v. Edsall, 74 Texas, 329; Western Union v. True, 105 Texas, 344; Western Union v. Riviere, 174 S. W., 650.

*Wagstaff & Davidson* and *N. L. Lindsley (Geo. H. Fearons,* of counsel), for defendant in error.—There being no evidence to show that appellant had any notice of the fact that C. B. Scarborough, deceased, was the father of appellee, the court should have given the special charge, and the judgment is wholly unsupported by the evidence. Davidson v. Telegraph Co., 21 Ky. Law Rep., 1292, 54 S. W., 830; Telegraph Co. v. Gotcher, 93 Texas, 114, 53 S. W., 686; Telegraph Co. v. Carter, 85 Texas, 586, 22 S. W., 961; Telegraph Co. v. Kirkpatrick, 76 Texas, 217, 13 S. W., 70.

It neither appearing from the language of the message sued on in this case nor from the testimony that at the time the message was filed with the defendant for transmission the defendant had notice that the

object and purpose for which the message was sent was to afford information upon which Mrs. Herring should act, or that she was expected to go to Abilene, the jury should have been peremptorily instructed in favor of the defendant. Davidson v. Telegraph Co., 21 Ky. Law Rep., 1292, 54 S. W., 830; Telegraph Co. v. Kirkpatrick, 76 Texas, 217; Telegraph Co. v. Carter, 85 Texas, 580.

MR. JUSTICE YANTIS delivered the opinion of the court.

The plaintiff in error recovered a judgment in her favor in the District Court of Taylor County, Texas, against the Western Union Telegraph Company, defendant in said suit, and the defendant in error here, for its failure to promptly deliver a telegram addressed to her husband, Henry Herring, at Roswell, N. M., which message was sent from Abilene, Texas, on the 25th day of September, 1908. The telegram in question was as follows:

"To Henry Herring, Roswell, N. M.:
  "C. B. died last night at San Antonio.
                  (Signed)        "Mrs. C. B. Scarborough."

The prosecution of the suit terminated with Mrs. Herring suing in her own name, though the suit was begun in the name of her husband. After the suit had been filed by him the husband and wife were divorced, and the cause of action sued upon was transferred to the wife, who prosecuted the suit alone.

It was alleged that the telegram was sent for the benefit of Mrs. Henry Herring, who was the daughter of Mrs. C. B. Scarborough; that it reached the Western Union office at Roswell, New Mexico, in about twenty-five minutes after it was sent, but that it was not delivered to Henry Herring for about twenty-five hours after it was sent, though both Herring and his wife, it is alleged, were well known in Roswell, and that Herring was employed within two blocks of the Western Union office at that place.

By the undisputed evidence it appears that when the message was finally delivered to Henry Herring at Roswell, it read as follows:

"Henry Arring, Roswell, New Mexico:
  "C. B. died last night at San Antonio.
                  (Signed)        "Mrs. C. B. Scarborough."

It was alleged that the telegraph company was guilty of negligence in changing the name "Henry Herring" to the name of "Henry Arring," and that such negligence, or some other negligence of the telegraph company unknown to Mrs. Herring, was the proximate cause of the delay in its delivery, and of the damage sued for.

The telegram was written in the offce of the telegraph company at Abilene, by one Ed Menielle, at the request of Mrs. C. B. Scarborough. Menielle testified, in relation to his connection with it, as follows:

"Mrs Scarborough gave me a list of names to telegraph, his chil-

dren and friends. She wanted to get them to Abilene, and let them know C. B. was dead, and get the children here."

He further testified:

"I went to the Western Union office the next morning to send these messages. I wrote this message in the Western Union office on First Street, in the Western Union office at Abilene, Texas. I pushed it over to the young man and told him to get it off as quick as he could. When he received it he turned around facing the door and looked up at the clock, and put the time of day on it. I made a statement to the agent there when I delivered this telegram, with reference to it. I wrote the telegram and shoved it over to him, and said: 'I want you to get that off as quick as you can, because I want to get his children and friends here.' I stated that C. B. Scarborough was dead. I told him that I wanted him to get it off as quick as he could, that I wanted to get C. B. Scarborough's children and friends here. I do not think I told him it was relatives or friends. I pushed the telegram over and said: 'Get that off as quick as you can. I want to get C. B. Scarborough's children and friends here.'"

On cross-examination he said:

"All that I said to that messenger boy when I went to deliver this telegram, any of them, was that I wanted him to get it off as quick as he could; that I wanted to get all of C. B. Scarborough's children and friends here."

He further stated:

"I answered Mr. Kirby that at the time I sent this telegram I only filed one other, and that to his other daughter. When I delivered the Herring telegram I made the statement that I wanted him to get it off as quick as he could; that I wanted to get his children and friends here."

He further stated that:

"I put in two (telegrams) at one time to his daughters, one to Valley Mills, and one to Roswell, N. M. One was addressed to Henry Herring, and the other one to Mrs. Tubbs. I did not know Mrs. Tubbs' initials, and had to address it to Mrs. Tubbs."

The agent of the telegraph company, J. F. Duke, testified that he received the message from Menielle, and that he knew nothing of the relationship of the parties. He stated that he asked Menielle as to whether he was able to give a better address.

The evidence shows that C. B. Scarborough died about September 24, 1908, in San Antonio; that during the evening or night of September 24, 1908, which was the day prior to the filing of the Herring message for transmission, a message was received at Abilene, over the Western Union Telegraph Company's lines, addressed to Mrs. Scarborough, notifying her of the death of her husband, which message was replied to at about 11::30 p. m. on the same day in a message transmitted through the office of the Western Union Telegraph Company by C. B. Scarborough, Jr., which was addressed to G. H. Moody, care Moody Sani-

tarium, San Antonio, Texas, instructing Moody to embalm the body of his father and ship same to Abilene. Having handled this latter message the day before the Herring message was filed for transmission, such fact was sufficient evidence to authorize the jury to conclude that the Western Union Telegraph Company, or its agents, had knowledge that C. B. Scarborough's remains would be transported from San Antonio to Abilene, and that it would be interred at the latter place. This, in connection with the testimony of Menielle, to the effect that he told the agent, when he was filing the Herring message for transmission, that: "I want you to get that off as quick as you can, because I want to get his children and friends here," was sufficient to authorize the jury to conclude that the sender wanted to get the children and friends to Abilene, Texas, in order that they might attend the funeral of the deceased.

From the judgment rendered in favor of the plaintiff in error, Mrs. Herring, the case was appealed and was decided by the Court of Civil Appeals for the Eighth District, at El Paso. In that court the judgment was reversed and rendered in favor of the defendant in error, Western Union Telegraph Company, on the ground that the telegram on its face did not convey notice to the telegraph company of the relationship of Mrs. Herring to the deceased, and that there was no other evidence of such notice given to the telegraph company's agent at the time the message was filed for transmission. (146 S. W., 699.)

On a previous appeal of the same case to the honorable Court of Civil Appeals for the Second District, at Fort Worth, that court held directly to the opposite view (127 S. W., 882), though it is contended by counsel for the defendant in error that the evidence was different in one respect, and that was, that on the trial of the case which was appealed to the Fort Worth Court of Civil Appeals there was no evidence of the sending by Menielle of the telegram to Mrs. Tubbs, the other daughter.

The honorable Court of Civil Appeals at El Paso erred, we think, in holding that there was no evidence to convey notice to the telegraph company of the relationship of Mrs. Herring to the deceased. This notice need not be conveyed by the face of the message, but may be conveyed quite as well by oral statement to the agent of the telegraph company who receives the message for transmission; and where such notice does not carry as much information as the agent of the telegraph company desires, if the message relates to death or sickness, but is sufficient to put him upon inquiry, and he fails to make such inquiry, his principal will be charged with the information that such inquiry would have disclosed. The uncontradicted evidence in this case shows that Menielle stated to the agent of the telegraph company that the purpose of the message was to secure the attendance of children and friends. It is contended by the defendant in error that it had no notice whether it was a friend or a child being advised of the death of C. B. Scarborough, and, therefore, it could not have contemplated

the damages that would accrue to a child, as was Mrs. Herring, in being denied the privilege of attending the funeral of a parent. This information was sufficient to apprise the agent of the telegraph company of the importance of promptly delivering the message, as, indeed, the telegram in its own terms so advised; it was sufficient to advise the agent of the telegraph company that either a child or a friend would be denied the privilege of attending the funeral if the message was not promptly delivered. If the agent of the telegraph company wanted more definite information, and wanted to know whether the message was for a child, or whether it was for a friend, the agent of the telegraph company should have made inquiry to ascertain the real facts from Mr. Menielle. As stated by Mr. Justice Henry in Telegraph Co. v. Adams, 75 Texas, 531, 6 L. R. A., 844, 16 Am. St., 920, 12 S. W., 857:
· "When such communications relate to sickness and death there accompanies them a common sense suggestion that they are of importance, and that the persons addressed have in them a serious interest.

"It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed.

"When the general nature of the communication is disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so to charge his principal with the information that inquiries would have developed."

Also see Telegraph Co. v. Carter, 85 Texas, 585, 34 Am. St., 826, 22 S. W., 961. Not having made such further inquiry to ascertain whether a child or a friend had a beneficial interest in the telegram, which information was accessible to it when the message was filed for transmission, it must be held to have had such information when it contracted for the prompt delivery of the message.

No other question being presented for our consideration, it follows that the judgment of the honorable Court of Civil Appeals for the Eighth District should be reversed, and the judgment of the District Court of Taylor County, which was in favor of the plaintiff in error, should be in all things affirmed; and it is so ordered.

*Reversed and judgment of District Court affirmed.*