MEADOWS v. WESTERN UNION TELE-
GRAPH CO. (No. 428.)

(Court of Civil Appeals of Texas. Beaumont.
Oct. 20, 1919.)

1. TELEGRAPHS AND TELEPHONES ☞67(2) —
FAILURE TO DELIVER MESSAGE PROMPTLY;
NOTICE OF RELATIONSHIP.

Where a telegram announcing a death was
addressed to husband and did not mention his
wife, defendant company was not chargeable
from the message itself with knowledge of the
relationship between the wife and deceased per-
son mentioned in message.

2. TELEGRAPHS AND TELEPHONES ☞73(1)—
EVIDENCE INSUFFICIENT TO SHOW NEGLI-
GENCE IN DELIVERING DEATH MESSAGE.

In suit by husband for the benefit of his
wife against defendant company for damages
due to negligence in transmitting and delivering
two death messages, held that peremptory in-
struction for defendant should be sustained on
the ground that no negligence was shown either
in the transmission of the message or in its
delivery.

Appeal from District Court, Angelina
County; L. D. Guinn, Judge.

Suit by Henry Meadows for the benefit of
his wife against the Western Union Tele-
graph Company. Judgment for defendant,
and plaintiff appeals. Affirmed.

K. W. Denman, of Lufkin, for appellant.
Young & Stinchcomb, of Longview, and
Mantooth & Collins, of Lufkin, for appellee.

WALKER, J. This suit was brought by
Henry Meadows for the benefit of his wife,
Evie Meadows, against the Western Union
Telegraph Company, for damages alleged to
be due to the negligence on the part of the
defendant in transmitting and delivering two
death messages from Lufkin, Tex., to Hum-
ble, Tex., on August 19 and 20, 1915. The
message of the 19th is as follows:

Dated Lufkin, Texas, 8/19/15.
To Henry Meadows, Humble, Texas.
Alien died last night. Will bury her at Kel-
tys tomorrow the twentieth.
[Signed] O. D. Davis.

This message was received at Humble at
9 a. m., August 20, 1915. The message of the
20th was dated Lufkin, Texas. August 20,
1915, and was as follows:

To Henry Meadows, Humble, Texas.
Evie's three year old sister died last night.
Will bury her at Keltys tomorrow evening.
Come if possible. [Signed] Douglas Dunn.
Received at Humble at 7:20 a. m. 8/20/15.

This case was tried before a jury, and at
the conclusion of the testimony the court in-
structed a verdict for the defendant. From

this judgment the plaintiff has appealed to
this court. The plaintiff duly excepted to
this peremptory instruction, and also request-
ed the court to submit to the jury the dif-
ferent issues raised by the pleadings.

[1] Without discussing the assignments of
error of appellant in the order presented in
his brief, we believe this case is controlled
by Western Union Telegraph Co. v. Carter,
85 Tex. 581, 22 S. W. 962, 34 Am. St. Rep.
826, and Southwestern Telegraph & Tele-
phone Co. v. Gotcher, 93 Tex. 114, 53 S. W.
686. As said in the Carter Case, supra,
discussing this telegram:

"'W. S. Carter, Taylor, Texas: N. B. Gor-
such dead. Answer. F. S. Faust,'—the tele-
graph company is chargeable with notice of the
relationship that exists, if any, between all the
parties named in the message."

Carter sued for damages caused by the
mental anguish of his wife on account
of the failure to get to her deceased father,
N. B. Gorsuch. This telegram, in its terms,
is almost identical with the telegram sent
by O. D. Davis, as shown above. In discuss-
ing the rights of Mrs. M. E. Carter, the wife
of W. S. Carter, to recover because of the
negligence of the telegraph company in han-
dling the telegram, the Supreme Court said:

"The plaintiff in error presents this assign-
ment: * * * 'The court erred in its conclu-
sions of law, that defendant is chargeable with
notice, or is affected with notice, by the terms
of the message, of the relationship of either
W. S. Carter (who is named) or M. E. Carter
(who is not named in the message) to N. B.
Gorsuch. * * *' As to M. E. Carter, the
objection is well taken. She is neither men-
tioned in the message, nor was there any actual
notice of her relationship to deceased."

In the Gotcher Case, supra, the Supreme
Court makes this statement of the facts:

"Spaugh went to the office in Farmersville,
about 12 o'clock m., and told the agent of plain-
tiff in error that Mr. Hartman had sent him to
the telephone to send W. E. Gotcher word that
his wife's brother was dead, and for him (W.
E. Gotcher) to come at once."

Gotcher brought suit for damages for the
mental anguish suffered by his wife caused
by the negligence of the telephone company
in failing to get Gotcher to the telephone.
In discussing plaintiff's right to recover be-
cause of the mental anguish of his wife, Jus-
tice Williams, speaking for the Supreme
Court, said:

"The difference between the cases referred
to and this is the fact that plaintiff's wife was
mentioned in the communication made by
Spaugh to the agent of plaintiff in error. She
was mentioned in such a way, however, as to
indicate, not that the message was intended for
her benefit, but rather that it was not so in-
tended. It was expressly stated that Gotcher

was the person wanted at the funeral, and his wife was only mentioned in identifying the deceased as her brother. * * * The statement in no way implied that the purpose was to give Mrs. Gotcher the privilege of going to the funeral. On the contrary, it might well have been assumed that she was already at her father's, and that only her husband's presence was sought."

This information, given to the telephone company verbally is the same given to the telegraph company by the message sent in this case by Douglas Dunn. Davis and Dunn, in delivering these telegrams to the defendant, gave the operator no information, except what the messages themselves gave. The Carter Case and the Gotcher Case, as we follow their history through our reports, have never been modified in any way, extending the liability of the defendant on the character of messages discussed in those cases.

Citing Telegraph Co. v. Edmondson, 91 Tex. 209, 42 S. W. 551, the court said in the Gotcher Case:

"And this court has already expressed its disinclination 'to extend the right of recovery in this class of cases beyond the limits already fixed by the decisions of this court.'"

We believe this case and the Carter and Gotcher Cases are clearly to be distinguished from the authorities cited. by appellant. Telegraph Co. v. Tucker, 108 Tex. 371, 194 S. W. 130; Herring v. Telegraph Co., 108 Tex. 77, 185 S. W. 293; Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Telegraph Co. v. Goodson, 202 S. W. 766; Telegraph Co. v. Streeter, 205 S. W. 940; Telegraph Co. v. Landry, 134 S. W. 848. The Landry Case is more nearly in point than any other authority cited by appellant. In that case the telegram read:

"Sam Roundtree, Schriever, La. Gus very low. Send someone to me. Answer."

Discussing the following proposition made by appellant:

"The telegraph company will only be held liable for such damages as it may reasonably be expected to foresee under the circumstances at the time the contract was made, and unless it had notice of the fact that plaintiff's father was expected to come in response to the message, it cannot be held liable for the damages sustained on account of his absence,"

—speaking for the court, Chief Justice James said:

"Defendant had notice that some person in close relationship to plaintiff that could come was expected to come, and this included the father. The assignments are overruled."

In the Goodson Case, the telegram read:

"W. A. Goodson. * * * Send Oscar at once to help wait on his father. Lida sick."

This court, in an opinion by Chief Justice Hightower, held that this message gave no notice to the defendant that W. A. Goodson would be expected to go to his father, and that he could not recover for mental anguish caused by negligence of the defendant in failing to deliver the message to him in time to go to his father, thus limiting his recovery to such mental anguish as he suffered by reason of his not being able to send Oscar to his father. The telegram in the Goodson Case is distinguished from the telegram in the Landry Case, in that the Goodson telegram read "Send Oscar," and the telegram in the Landry Case read "Send someone."

[2] We believe that this peremptory instruction should also be sustained on the ground that no negligence was shown as against the defendant, either in the transmission of the Dunn telegram or in its delivery. August 19th was immediately after the great Galveston storm, and defendant's lines between Houston and Humble and between Humble and Lufkin were down, and no messages of any kind could be sent from Lufkin to Humble, nor from Humble to Lufkin on the 19th. On the 20th the operator went to his office at Humble at 7 o'clock, grounded his wires, made connection with Houston, and received the Dunn telegram at 7:20 a. m. The train going from Humble to Lufkin passed through Humble at 8 a. m. There was no other train by which plaintiff's wife could have reached Lufkin that day in time for the funeral. Plaintiff and his wife lived about six blocks from the telegraph office. She and her husband, Henry Meadows, were not known to the operator. She testified that if the message had been delivered to her 30 minutes before train time she could have gotten ready and could have gone on the train. The agent, not knowing Mr. and Mrs. Meadows, was forced to make inquiry for them. He phoned to all of the oil companies and oil operators having offices at Humble, and, not finding him on their pay rolls, he then went to the business section of town, inquired at the drug stores, grocery stores, post office, saloons, and other places where he thought Mr. Meadows would be known. No one knew him, nor was he able to get any information regarding where Mr. Meadows lived. At that time Humble had a population of about 6,000. The failure of the defendant to deliver this telegram within ten minutes after it was received, thus allowing plaintiff's wife the 30 minutes which she said would have been required by them in order to take the 8 o'clock train, under the facts of this record, does not raise a question of negligence. Even though we concede that plaintiff's wife could have gotten ready to the train in less time than 30 minutes, that would not raise an issue of negligence.

Appellee makes this proposition:

"If this court should conclude that it was the duty of the operator receiving the message for transmission to make inquiry as to whether or not the wife of Meadows was expected to attend the funeral in response to the telegraphic message, we then say that there was no allegation in the plaintiff's petition to that effect, and the plaintiff cannot ask a recovery on a ground not covered by allegations in his petition."

This is a correct statement of plaintiff's petition, but, having affirmed this case on the two grounds discussed above, we do not think it necessary for a proper disposition of this case to discuss this proposition.

Finding no errors in this record, the judgment of the trial court is in all things affirmed.