## WESTERN UNION TELEGRAPH CO. v. COLEMAN et al. (No. 11535.)

(Court of Civil Appeals of Texas. Fort Worth. March 27, 1926.)

**Telegraphs and telephones ⬅68(5)—Telegraph company held not liable for mental anguish of wife of addressee, where telegram announcing serious illness did not indicate addressee had wife.**

Telegraph company was not liable to wife of addressee for failure to promptly deliver telegram announcing serious illness, where there was nothing on face of telegram or showing of notice to company's agents that addressee had a wife, or that any one else had any interest in information contained in telegram.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by Mrs. O. J. Coleman and husband against the Western Union Telegraph Company. From a judgment for the named plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

See, also, 284 S. W. 279.

Shropshire & Bankhead, of Weatherford, for appellant.

Hood & Shadle, of Weatherford, for appellees.

DUNKLIN, J. The Western Union Telegraph Company has appealed from a judgment in the sum of $600 rendered against it in favor of Mrs. O. J. Coleman, who was joined in the suit by her husband, W. T. Coleman, for the alleged negligent failure of the defendant to make prompt delivery of a telegram sent from Memphis, Tex., and addressed to Mrs. Coleman's husband, W. T. Coleman, at Weatherford, Tex. The telegram was as follows:

"Memphis, Texas. 11–15 A. M.
                    May 11, 1924.
"W. T. Coleman, Weatherford, Texas.
"Loman's condition very serious.     Mary."

May 11th, the date on which the message was sent, was Sunday. At that time the office hours of the defendant company in the town of Weatherford were from 8:30 to 10 in the morning, and from 4:30 to 6 o'clock in the afternoon, and the message was sent too late to reach the Weatherford office during its office hours in the morning, but it was received by the defendant at that office at 4:50 o'clock in the afternoon. It was not delivered until about 9 o'clock Monday morning, May 12th, when the addressee called for it at the Weatherford office in response to a postal card that had been mailed to him by the agent on the afternoon of the preceding day.

The statement of facts shows that upon receipt of the message at the Weatherford office, the messenger boy, Joe Thomas, made repeated efforts to locate the addressee; those efforts including inquiries of several persons residing in the town of Weatherford, but the messenger failed to find any one who could give him the information desired or who even knew the addressee. It was further shown that none of the other representatives of the defendant company at that office were in possession of that information. At the time the message was received for transmission at defendant's office in Memphis, the sending agent requested of the sender a better address of W. T. Coleman, but was informed that the sender was unable to furnish the same. After unsuccessful efforts to locate W. T. Coleman, the Weatherford office sent two service messages to Memphis requesting a more definite address of W. T. Coleman. When the first service message was received the Memphis office again requested the sender for a more definite address, but was again told that the sender knew nothing more than that W. T. Coleman resided in the town of Weatherford.

"Loman," the person named in the telegram, was the son of W. T. Coleman, and wife, O. J. Coleman, and he resided in Memphis, Tex., about 250 miles from the town of Weatherford. The message was sent by Loman's wife.

According to the testimony of W. T. Coleman, if the message sued on had been promptly delivered on Sunday afternoon, he and his wife would have immediately started for Memphis by automobile, and would have reached there by 9 o'clock the following morning. As soon as he received the message he intended to make the trip to Memphis by train, but between 11 and 12 o'clock Monday morning he received another message requesting him not to start until he received further information from his daughter-in-law, the sender of the first message. Between the hours of 4 and 5 o'clock on May 12th he received another message announcing the death of his son, which occurred at 2:15 p. m. on that day. This message further announced that the body of his son would be shipped to Paris for burial, and would leave Memphis that afternoon, and would arrive in Fort Worth at 7 o'clock on the morning of May 13th. The record shows that W. T. Coleman and his wife met that

train and accompanied the remains to Paris, where the burial occurred. The record further shows that during all of the morning of May 12th and up to the date of his death in the afternoon of that day Loman Coleman was in an unconscious condition. The damages claimed by the plaintiff Mrs. O. J. Coleman were for mental anguish suffered by her in failing to reach her son's bedside before his death.

There was nothing in the face of the telegram indicating that W. T. Coleman, the addressee, had a wife, or suggesting that any one else except himself was in any manner interested in the information given. Furthermore, aside from the contents of the telegram, there was an absence of any showing of notice to the defendant's sending agent, or any other agent, that W. T. Coleman was a married man, or that Mrs. O. J. Coleman or any one else in Weatherford other than the addressee had any interest in the information contained in the telegram. Under such circumstances no liability was shown. That conclusion is well established by such decisions of the Supreme Court of this state as W. U. Tel. Co. v. Kirkpatrick, 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37; W. U. Tel. Co. v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826; S. W. Tel. & Tel. Co. v. Gotcher, 93 Tex. 114, 53 S. W. 686, and other decisions there cited. To the same effect are the following decisions of our Courts of Civil Appeals: W. U. Tel. Co. v. Proctor, 6 Tex. Civ. App. 300, 25 S. W. 811; Maxville v. W. U. Tel. Co. (Tex. Civ. App.) 140 S. W. 464; W. U. Tel. Co. v. Herring (Tex. Civ. App.) 146 S. W. 699; W. U. Tel. Co. v. Taylor (Tex. Civ. App.) 162 S. W. 999; Meadows v. W. U. Tel. Co. (Tex. Civ. App.) 216 S. W. 211.

Accordingly, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant, without a determination of the merits of other assignments of error presented in appellant's briefs.