**WESTERN UNION TEL. CO. v. WATSON et al.**

**No. 2387.**

Court of Civil Appeals of Texas. Waco.

April 9, 1942.

Rehearing Denied April 30, 1942.

Naman, Howell & Boswell, of Waco, and Francis R. Stark, of New York City, for appellant.

John D. Abney and Frank McDonald, both of Hillsboro, for appellees.

RICE, Chief Justice.

Mrs. Jimmie Watson and husband sued Western Union Telegraph Company to recover damages for mental anguish resulting from the latter's negligent failure to deliver the following message: "J. P. McMillion died this evening ten twenty funeral three Wednesday." The deceased was a great-uncle of Mrs. Watson by marriage. There was sufficient evidence to show that an unusual degree of affection existed between them. The case was submitted on special issues, in response to which the jury found, in substance, that defendant had timely notice of the close relationship existing between the deceased and plaintiff and that the failure of defendant to deliver the telegram constituted negligence which resulted in mental anguish suffered by plaintiff, to her damage in the sum of $300. The court accordingly rendered judgment for plaintiffs and defendant has appealed.

Appellant presents the case for review in this court under one proposition as follows: "Since this was a suit to recover solely for damages for mental anguish alleged to have been suffered due to the defendant's failure to deliver a funeral notification message, wherein the undisputed evidence showed: (1) that the relationship of the parties involved in the message was that of great-uncle and great-niece by marriage; and (2) that the defendant telegraph company had no knowledge and was not advised at the time the message was delivered to it for transmission, or at any other time when it could have avoided the damages, that there existed an unusual degree of affection between said parties, the judgment of the trial court herein allowing a recovery by the plaintiff against the defendant for mental anguish was erroneous."

▇ It appears to be the rule, in case of a death message, that the telegraph company is charged with knowledge of the identity of the parties, the actual kinship existing between them, and the purpose of the message; and if the relationship is close, such as father or son, husband or wife, brother or sister, or the like, the company is presumed to know that there exists, or probably exists, such degree of affection that those so related will likely suffer mental anguish if they are unable to arrive at the deathbed or attend the funeral of such relative. Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S.W.

857, 6 L.R.A. 844, 16 Am.St.Rep. 920; Western Union Telegraph Co. v. Coffin, 88 Tex. 94, 30 S.W. 896; Western Union Telegraph Co. v. Luck, 91 Tex. 178, 41 S.W. 469.

▇ On the other hand, if the parties are only distantly related, or not related at all, the telegraph company is still charged with knowledge of such kinship as in fact exists, but it is not presumed to know that there exists such special affection that they will suffer mental anguish if they are unable to reach the deathbed, or attend the funeral of such person. In respect to the latter class of cases, it is therefore necessary to both allege and prove not only the existence of such special conditions or relations, but that the telegraph company had notice thereof at a time when, in the exercise of ordinary care, it could have avoided the damages. Western Union Telegraph Co. v. Wilson, 97 Tex. 22, 75 S.W. 482; Western Union Telegraph Co. v. Samuels, Tex.Civ.App., 141 S.W. 802; Western Union Telegraph Co. v. Taulbee, Tex.Civ. App., 20 S.W.2d 232.

This court has heretofore held, in the case of Western Union Telegraph Co. v. Taulbee, supra (opinion by Chief Justice Gallagher), that when the kinship is remote, or non-existent, and in the absence of disclosure or inquiry, the law charged the telegraph company with knowledge of the actual relationship by blood or marriage existing between the parties, and with such relationship only, and not with knowledge of any special intimacy or affection that might have existed between them; that such conditions are special, and do not ordinarily exist where the relationship is by affinity only; and therefore the duty of disclosing such special condition was imposed upon the sender of the message, and no duty of inquiry with reference thereto devolved upon the telegraph company. See, also, Western Union Telegraph Co. v. Samuels, 141 S.W. 804, point 3; Western Union Telegraph Co. v. Gibson, Tex. Civ.App., 39 S.W. 198, 200; Western Union Telegraph Co. v. Luck, supra; Western Union Telegraph Co. v. Wilson, supra; Western Union Telegraph Co. v. Kuykendall, 99 Tex. 323, 89 S.W. 965.

▇ Applying the foregoing rules of law to the facts of this case has led us to the conclusion that the contentions of appellant must be sustained, because, we think, there is no evidence in the record that the appel-

lant had notice of the special love and affection found to have existed between Mrs. Jimmie Watson and deceased.

Plaintiff's evidence in respect to the delivery of the telegram to the defendant company was elicited from the witness R. S. McMillion, who testified, substantially, that he was a son of the deceased; his father died about 10:20 P. M., on Tuesday night, February 20, 1940; he went immediately from his father's home in the country, a distance of about 15 miles, to Bowie, Texas, in order to send two telegrams, viz: one to Mrs. E. J. Moore at Morris, Oklahoma, and one to appellee at Hillsboro, Texas; he arrived at the depot in Bowie about midnight and told the telegraph operator the name and address of each intended receiver, the contents of the messages to be sent and the operater wrote out the messages which the witness signed; he told the operator Jimmie Watson lived on Park Drive at Hillsboro, but he had forgotten the street number of her residence; the operator told him, he believed, that the Hillsboro office was closed at night; the operator stated "he would do his best and get it out and if he didn't I could come back up there at the Western Union office for the telegram after it come back"; he told the operator Mrs. Moore was a sister of the deceased and he might have told the operator that Jimmie Watson's mother was a niece of the deceased; he paid the operator the charges for the transmission of the two messages and left; he returned to the telegraph office around 9 or 10 o'clock on the morning of February 21st and "asked if that telegram had been delivered or had come back and they didn't have any trace of it at that time."

Statements more pointed, and circumstances having, we think, more probative force, have been held not to constitute notice of such special conditions or relations. Western Union Telegraph Co. v. Taulbee, supra; Western Union Telegraph Co. v. Gibson, supra; Western Union Telegraph Co. v. Luck, supra; Western Union Telegraph Co. v. Wilson, supra, and Western Union Telegraph Co. v. Kuykendall, supra.

█ Since the record indicates that the case has been fully developed, and that no further testimony is attainable, we think this case should be finally disposed of in this court. Therefore, the judgment of the court below is reversed; and, as there was a breach of the contract to promptly transmit and deliver the message, for which breach plaintiff is entitled to recover nominal damages, judgment is here rendered for plaintiffs for the sum of one dollar and all costs in the court below. The costs of this appeal are taxed against appellees, the plaintiffs below.

Reversed and rendered.

HALE, Justice (dissenting).

Being unable to concur in the disposition to be made of this cause, I respectfully enter the grounds of my dissent to the conclusion expressed in the majority opinion of the court.

As I understand the authorities cited in the majority opinion, the measure of a telegraph company's liability for its negligent failure to promptly deliver a message is the same as that applied to any person for his negligent failure to perform a contract obligation viz: to respond in damages for such consequences as may have been reasonably within the contemplation of the contracting parties. When a telegraph company contracts to deliver a message, which, on its face, shows that it relates to the funeral of a deceased person, the company is charged with notice (whether we call such notice actual, constructive or implied) that near relatives of the deceased will suffer mental anguish as a consequence of the failure to attend the obsequies because that is an experience common to the emotions of civilized mankind. However, a telegraph company is not charged with notice that a person whose kinship to the deceased is remote, or is by affinity only, will suffer mental anguish as a consequence of the failure to attend the funeral of the deceased because that is not a common or usual experience. Therefore, when the relationship between the deceased and the sendee in the telegram is remote, in order to hold a telegraph company liable for damages on account of mental anguish resulting from the negligent breach of its contract and in order to show the amount of such damages as were reasonably within the contemplation of the contracting parties, it must be shown by pleading and proof that there was not only an unusual degree of affection existing between the deceased and the sendee, but that the telegraph company had notice of such unusual ties of affection at a time when, in the exercise of ordinary care, it could have reasonably avoided the mental anguish and damages resulting therefrom. If the telegraph company has no knowledge or notice of such unusual ties of affection, then,

as a matter of law, it may not be held for the special damages which it could not have reasonably anticipated. Necessarily the degree of mental anguish and the amount of damages resulting therefrom are dependent upon the degree of affection existing between the parties.

In this case, R. S. McMillion testified, in effect, that Mrs. Jimmie Watson lived in the home of deceased when she was a child, visited him regularly during his declining years for about two days in each year, and regarded him with that degree of affection which a grandchild usually bears for her grandparents. He did not disclose any of this information to appellant's agent at any time, although he testified that when he delivered the messages to appellant's operator he thinks he advised the operator "of the close relationship which existed between the deceased and Mrs. Watson," meaning thereby that he might have told the operator Mrs. Watson was a niece of the deceased, but he did not tell the operator how long Mrs. Watson had lived with the deceased or how much they thought of each other because "a fellow wouldn't think of things like that at a time like that." It was further shown that Mrs. Watson bore the given name of the deceased, having been "named after her Uncle Jim." She was expecting to attend the funeral, had arranged with the family to notify her immediately in case of the death, and would have attended the funeral had she received the telegram of notification. The funeral was not held until Thursday, February 22nd, and the distance from Bowie to Hillsboro was approximately 125 miles. It appears that the telegram was duly received in the Hillsboro office of appellant, but was never delivered to Mrs. Watson, and she was not advised of the funeral until she received a letter from a relative several days later.

While there was no direct evidence showing that appellant's agent had knowledge at any time of the unusual degree of affection which existed between the deceased and appellee, I think the evidence in the case did tend to show that appellant's agent had actual notice of sufficient facts and circumstances to put a reasonably prudent person similarly situated upon inquiry, which inquiry, if followed with due diligence, would have led to the timely discovery of such additional facts from R. S. McMillion on Tuesday night or on Wednesday morning, as appellant's agent might have desired, with reference to the affectionate relationship existing between the parties at interest. I do not think the law requires a complete disclosure to unsympathetic ears of all the details bearing upon the tender ties of affection that might exist between the deceased and the sendee in a death message. In my opinion, the contents of the message in this case, when considered in connection with the time of the night it was filed, the interest manifested by R. S. McMillion in returning to the telegraph office on Wednesday morning in order to ascertain whether the message had been delivered, and the other evidence herein referred to, was sufficient to raise fact issues on the ultimate controlling question of constructive notice. Consequently, I cannot say, as a matter of law, there was no evidence tending to show that appellant had such notice as to render it liable for the damages complained of. Herring v. Western Union Telegraph Co., 108 Tex. 77, 185 S.W. 293; Western Union Telegraph Co. v. Mobley, 112 Tex. 528, 249 S.W. 182; Western Union Telegraph Co. v. Hartfield, Tex. Civ.App., 138 S.W. 418, error denied; Western Union Telegraph Co. v. Riviere, Tex.Civ.App., 174 S.W. 650; Goodson v. Western Union Telegraph Co., Tex.Civ. App., 188 S.W. 736; Western Union Telegraph Co. v. Lane, Tex.Civ.App., 152 S.W. 2d 780.