THE WESTERN UNION TELEGRAPH COMPANY V. I. E. JOBE.

No. 194.

1. **Damages—Special Exceptions.**—In a suit against a telegraph company. plaintiff alleged that by reason of the delay in the transmission of the message, another message costing 40 cents was sent, inquiring about the delay, which plaintiff was compelled to pay, and by reason of said delay a hack was sent by L. A. L. Lampkin, a relation of plaintiff, to take plaintiff's family to Harwood, and defendant is responsible for the same in the sum of $5. *Held*, that the sending of the hack would not be such damages as might reasonably have been contemplated would result from the failure to deliver the message with dispatch, and as was the natural and proximate result of such neglect of duty, and the exception should have been sustained thereto. This error can be cured by remittitur. It might have been anticipated by the company that if it failed to deliver the message promptly inquiry would be made by telegram in regard to it, and this would cost something, and would be a proper element of damages.

2. **Delay by Surrendering Wire to Railway Company no Excuse.**—Defendant can not excuse delay in delivering a telegram by alleging that its wire was surrendered to a railway to transact its business.

3. **Stipulation Requiring Notice of Damages less than Ninety Days Invalid.**—A stipulation on a telegram requiring notice to be given of claim for damages within a less period than ninety days is invalid, and no notice was necessary as a condition precedent to the institution of the suit. The act of Legislature is constitutional.

4. **Evidence Admissible to show Notice of Relationship.** — Evidence that in February and March, 1891, messages were sent to Mrs. Ray and Mrs. Jobe about their father's condition, is competent to show relationship between them, and it was not necessary to produce the original messages for that purpose.

5. **Evidence of Mental Anguish.** — Evidence of how appellee's wife seemed to be affected by reason of her failure to see her father before his death is not objectionable, as the jury could assess the damages produced from that cause without any evidence. Tel. Co. v. Adams, 75 Texas, 535.

6. **Remarks of Attorney.** — The remarks of an attorney, although improper, are not ground for reversal unless it is shown that the jury was influenced thereby.

ON MOTION FOR REHEARING.

7. **Mental Anguish.**—Mental anguish is an element of damages deemed to be within the contemplation of the telegraph company as a natural and probable result of its neglect to deliver with reasonable dispatch a message such as appellant undertook to transmit in this case, which principle is maintained by an unbroken line of decisions of our Supreme Court.

8. **Charges.**—See opinion for charges of the court that were applicable and correct, and charges asked and correctly refused.

APPEAL from Gonzales. Tried below before Hon. GEORGE MCCORMICK.

*Walton, Hill & Walton,* for appellant.—1. Court erred in striking out the defense that the wire was being used by the railway company in safely managing trains and serving the public. Tel. Co. v. Broesch, 72 Texas, 654; Tel. Co. v. Rosentreter, 80 Texas, 406; Tel. Co. v. Harding, 103 Ind., 505; Gion v. Tel. Co., 24 Fed. Rep., 123; Gray on Com. by Tel., sec. 13.

2. A stipulation for notice for damages in writing within sixty days from date of filing message is a valid defense. Tel. Co. v. Rains, 63 Texas, 27; Tel. Co. v. Culberson, 79 Texas, 313; Const., art. 3, sec. 35; Acts 22nd Leg., p. 20; Cool. on Const. Lim., 170.

*Fly & McNeal,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee for the recovery of $1975 damages for alleged negligence in delivering a message giving notice of the serious illness of his wife's father, thereby depriving

her of being with her father during the last hours of his life, from which deprivation she suffered great mental anguish. Damages were also claimed for expenses incurred by a relative sending another message and a hack, for the expenses of which it was alleged the defendant became liable. The cause was tried by a jury, resulting in a verdict and judgment for plaintiff for $750, from which judgment this appeal is taken.

*Conclusions of Fact.*—1. Appellee's wife's father, J. L. Lampkin, being sick at Harwood, about eighteen miles from Lockhart, where plaintiff and his wife then resided, J. L. Norwood, acting for appellee and his wife, delivered to appellant's agent at Harwood, at 6:10 o'clock p. m., August 1, 1891, for transmission by telegraph at Lockhart, Texas, the following message:

"HARWOOD, TEXAS, August 1.
"*To I. E. Jobe, Lockhart, Texas:*
"Mr. Lampkin is worse. Come down at once.
"J. L. NORWOOD."

For the transmission of which message he paid appellant's agent for appellee 25 cents. The message was written on one of appellant's blanks, upon which was printed the following: "Form number 1. The Western Union Telegraph Company. The company transmits and delivers messages only on conditions limiting its liability, which have been assented to by the sender of the following message. Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages, beyond the amount of tolls paid thereon, nor in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission. This is an unrepeated message, and is delivered by request of the sender under the conditions named above."

2. The relationship between plaintiff's wife and J. L. Lampkin, and the serious illness of the latter, were known to appellant's agent at Harwood when the telegram was delivered her for transmission.

3. To transmit the message over appellant's wires to its destination it was necessary to telegraph it to San Antonio, thence to San Marcos, and from there to Lockhart. The message was received by appellant's agent in Lockhart at 8:20 p. m., August 1, 1891, but was not delivered to appellee until near 10 a. m. on the following day. I. E. Jobe was well known in Lockhart, and resided near appellant's telegraph office, and by the exercise of ordinary care and diligence the message could have been delivered within a few minutes after it was received by appellant's agent in that town, but such care and diligence was not used by appellant's servants in its delivery.

4. J. L. Lampkin was on his deathbed when the message was delivered for transmission to appellant's agent at Harwood, and died at 10 o'clock a. m., August 2, 1891.

5. That by reason of the delay in the delivery of the message to appellee, his wife was prevented from reaching his father's bedside until after his death, by reason of which she suffered great mental anguish.

*Conclusions of Law.*—The petition alleged that plaintiff's wife's father, J. L. Lampkin, being ill at Harwood, eighteen miles from Lockhart, J. L. Norwood, acting for plaintiff and his wife, delivered to defendant's agent at 4:30 p. m., August 1, 1891, the following message:

"Harwood, Texas, August 1.
"*To I. E. Jobe, Lockhart, Texas:*

" Mr. Lampkin is worse.   Come down at once.
"J. L. Norwood."

That defendant had notice of the relationship of plaintiff's wife, and "that it was absolutely necessary that plaintiff should get the message in the shortest possible time."   That defendant did not deliver it until 10:30 a. m., August 2, 1891.   That plaintiff lived and did business as a merchant in Lockhart.   That if the message had been delivered promptly, plaintiff's wife could and would have been with her father in three hours after receipt of message.   That the father died at 10:15 a. m., August 2, 1891.   That immediately after receiving the message, plaintiff's wife left for Harwood in a private conveyance.

" That by reason of the delay in the transmission of said message, another message, costing the sum of 40 cents, was sent to plaintiff, inquiring about delay, and he was compelled to pay for the same; and by reason of said delay a hack was sent by L. A. L. Lampkin, a relation of plaintiff, from Luling to Lockhart, to take plaintiff's family to Harwood, and defendant is responsible for the same in the sum of $5;  *  *  *  and he pleads all these items as damages occasioned by the carelessness and neglect of defendant in transmitting and delivering said telegram."

The defendant specially excepted to the petition, upon the ground that the allegations as a basis for the recovery of the items $5 and 40 cents as actual damages are not sufficiently specific to put defendant on its defense against the same, or to authorize recovery; that the necessity of said expenditures and the special circumstances rendering them recoverable, are not set forth, and the same do not appear to be the natural and proximate result of the negligence complained of.

The action of the court in overruling this exception is complained of as error.   We think this assignment is well taken as to the item of $5 claimed for the hack.   The appellant can be held liable only for such damages as it might have reasonably contemplated would result from its

failure to deliver the message with reasonable dispatch, and as were the natural and proximate result of such neglect of duty. At the time the message was delivered to the company, or at any time before its delivery to appellee, it could not have been reasonably contemplated by the agents of appellant that appellee's relatives had sent or would send a hack from Luling to Lockhart for his family, and there was no allegation to the effect that appellee's agent, or any one else, had informed the company or its agents that a hack had been or would be sent for appellee's family; nor can we see how the sending of the hack as alleged would naturally and proximately flow from a breach of appellant's duty. It might have been reasonably anticipated by the company that if it failed promptly to deliver this message, inquiry would be made by telegram in regard to it, and that an inquiry by such means would cost something; and we think the exception to that part of the petition claiming damages for the cost of such a telegraphic inquiry was not good.

The matter in the petition to which the exception was urged was not directly submitted to the jury in the court's charge. But it was not withdrawn. And as the appellee testified, that "he heard that L. A. L. Lampkin sent a hack from Luling to Lockhart for his family, and it was worth $4 for a hack from Luling to Lockhart," and the court having instructed the jury if they found certain facts to find for plaintiff such damages as you deem just and proper under all the evidence, the jury might have considered the item as an element of damages, and included it in its verdict. We think, however, that this error can be cured by a remittitur.

The appellant also pleaded that there was an error in the address in the message as it was received in Lockhart, which was caused without its fault, and that its agent at Lockhart, on account of the error, did not and could not know for whom it was intended. That when received its office was closed, and that on account of its being compelled, on the morning of the 2nd day of August, 1891, for a short time to surrender the use of its lines to the use of the Missouri, Kansas & Texas Railway Company in conducting and directing its trains, there may have been some delay in the discovery of the error and delivery of the message. The part of the answer by which appellant sought to excuse the delay upon the ground that its wires were surrendered to the railway company was excepted to by appellee, and the exception sustained. Upon the authority of Telegraph Company v. Rosentreter, 80 Texas, 406, we hold this was not error.

The appellant pleaded, that at the time the contract for the transmission of the message was entered into, it was stipulated that appellant should not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message, and that appellee's claim was not presented either within that period or ninety

days.  An exception was made by appellee, and sustained by the court, to the answer pleading this stipulation as a defense.  We think the exception was properly sustained.  "No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid, unless such stipulation is reasonable; and any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void." Acts 22nd Leg., sec. 2, p. 20.  We do not believe that the act from which the quotation is made is violative of article 3, section 35, of our Constitution.  The stipulation requiring the notice to be given within a less period than ninety days is void, and no notice whatever was necessary as a condition precedent to the institution of the suit.

No notice being required, the ruling of the court upon evidence offered by appellee to prove that notice such as was stipulated was given within ninety days, and the refusal of the court to give the special charge relating to such testimony asked by appellant, are immaterial, and in no way affected the merits of the case.

J. E. Lampkin, a son of the deceased, was allowed to testify, over appellant's objections, as follows:  "We had sent messages to Lockhart in February and March, 1891, to Mrs. Ray and Mrs. Jobe about father's condition."  This testimony was admissible as a circumstance to show that appellant's agent knew at the time she received the message for transmission of the relationship existing between the deceased and appellee's wife.  And as it was the fact of sending such messages which was sought to be established as a circumstance to prove such knowledge, it was unnecessary to produce the original message for the purpose of proving it.

Witnesses were allowed to testify, over appellant's objections, as to how appellee's wife seemed to be affected by reason of her failure to get the message in time to reach her father before his death.  In a case like this, where similar testimony was offered, our Supreme Court said: "As the jury would be instructed that they might in assessing damages include her mental anguish in their estimate, it was doubtless thought that evidence of mental condition  *  *  *  might be given.  As juries may from their own knowledge and experience of human nature estimate damages proceeding from that cause without any evidence, it is not important to produce it, and when produced it ought not, as a general rule, to have a controlling effect; and yet we are not able to see why the fact that mental anguish was felt and was exhibited by speech or otherwise may not be proved for what it may be worth.  It at least furnishes no ground for setting aside a verdict that might be sustained without any evidence as to the existence or degree of mental pain."  Tel. Co. v. Adams, 75 Texas,. 535.

The quotation from the decision applies as well to the expression of appellant's wife, "Words of mine are inadequate to describe my feelings,"

and to her statement, " While I suffered great mental pain on account of not being with my father in his last moments, and with the remainder of his family at that time in their affliction, yet I suppose that any other child who was devoted to a father and desired to be with him in his last hours, would suffer as much as I did," which were also admitted in evidence over appellant's objections.

It does not appear that the jury was influenced in their verdict by the remarks of appellee's counsel in his opening address. The remarks were improper, but the other counsel for appellee, in his closing address, strenuously insisted to the jury that it was their duty to banish from their minds such effect, if any, such remarks may have had upon them.

We think the charge of the court fully and correctly instructed the jury as to the law applicable to the case, and that there was no error in the court's refusal to give any of the special charges asked by appellant.

If the appellee will enter a remittitur in this court by February 7, 1894, of $5 on the judgment recovered in the court below, the judgment will be affirmed and the costs of this appeal taxed against appellee; otherwise the judgment will be reversed and the cause remanded.

> *Appellee to remit $5 and pay costs;*
> *Then affirmed.*

Delivered February 7, 1894.

Justice FLY did did not sit in this case.

### ON MOTION FOR REHEARING.

NEILL, ASSOCIATE JUSTICE.—As counsel for appellant question the correctness of our first, second, third, and fourth conclusions of fact, we will give the testimony upon which they are based. As to the first: J. L. Norwood, plaintiff's agent who sent the message, swore that the message copied in our conclusion is the message in exact words dictated by him to appellant's agent at Harwood; that it is just what he dictated to her; that he had never heard of any firm of I. E. Jobe & Co., and did not tell appellant's operator to address the message to I. E. Jobe & Co.

This message had to be transmitted via San Antonio, from there to San Marcos, and from thence to Lockhart, its destination. When the message was received at San Marcos by appellant's agent there, it was just as it is set out in our conclusion. At least appellant's operator there testified that it was; for she says: " The message was addressed to I. E. Jobe, Lockhart, Texas. I received the message just like the copy above set out [the one copied in the court's conclusion], and I forwarded it. It is and was addressed to I. E. Jobe, Lockhart. I received it by sound. That is my usual and only way of receiving a message."

On the other hand, appellant's operator at Harwood swore that she

wrote the message just as Mr. Norwood dictated it to her, and she wrote it just as it now is (referring to a message which she identified as the original), "I. E. Jobe & Co.;" and the agent at San Antonio testified that the message he received there was addressed to I. E. Jobe & Co., and that he wired it to San Marcos, addressed just as he received it.

This is the substance of the testimony in relation to our first conclusion of fact, and we believe that it is reasonably sufficient to support it. There can be no question, however, about the telegram being directed to either "I. E. Jobe" or "I. E. Jobe & Co.," and we concur with the district judge in his instruction to the jury, that "under the circumstances in this case, it would not matter whether it was directed to one or the other."

As to our second conclusion, which is, that "The relationship between plaintiff's wife and J. L. Lampkin, and the serious illness of the latter, were known to appellant's agent at Harwood when the telegram was delivered her for transmission." The evidence upon which we base it is as follows: J. E. Lampkin, a son of deceased, testified: "I know and then knew [referring to date of message] the manager of defendant's office at Harwood. It was Miss Dean Richardson. She knew our family, and knew the condition of my father. She knew the relations existing between John Lampkin [his father] and Mrs. Jobe. Harwood is a very small place, and people all know each other." Appellee's wife was at her father's house in July, 1891, which was during his last illness. Miss Richardson does not say that she did not know the relationship existing between the deceased and Mrs. Jobe. On direct examination her testimony was, "I did not know Mr. I. E. Jobe, nor his wife." But on cross-examination she said, "I had heard that Mr. Lampkin, the man who died at Harwood, had a daughter whose name was Mrs. Jobe, also one named Mrs. Ray, but I did not know them at the time." The very last sentence of her testimony is, "When the message was received from J. L. Norwood I knew Mrs. Jobe, plaintiff's wife, was a daughter of John Lampkin." She of her own motion wrote the note on the message: "Have asked San Antonio to use every effort to get this message through to-night to Lockhart, as Mr. Lampkin may not live until to-morrow. D." This shows she knew the importance of getting the message to Lockhart the night she received it for transmission. The voluntary interest that it manifested she felt in the matter is a circumstance to be considered in determining whether she knew of the relationship between the parties; and when it is taken in connection with the evidence quoted, and the fact that she did not deny knowledge of such relationship, we think that this court is fully warranted in its conclusion. A different conclusion on our part would, in our opinion, be an invasion of the province of the jury, who must have found as we have to have rendered the verdict for appellee. The verdict is reasonably supported by the evidence, and we conceive it our duty to sustain it.

As to our third conclusion of fact:   It is complained of because it ig-nores, in finding that the message arrived at Lockhart at 8:20 p. m., August 1, 1891, the fact that when it so arrived it was by reason of erro-neous transmission addressed to John Lampkin.   If such is a "fact," we think it should be "ignored," for in our opinion it could only be a "fact" through the negligence of appellant's agents in transmitting it, for which appellant would be responsible.   Electric wires may play some strange tricks, but it does not "stand to reason" that a message prop-erly sent from San Marcos, as appellant's agent there testifies, addressed to "I. E. Jobe," would be so changed in its transmission to Lockhart as to arrive there addressed to "John Lampkin."   The jury didn't believe that, and we don't either.   If appellant's agents were not guilty of neg-ligence in transmitting the message, it was received at Lockhart addressed to I. E. Jobe; and by the exercise of reasonable care the appellant could have delivered it to appellee within a few minutes after its receipt.   If on account of appellant's negligence, it was not received as a message ad-dressed to I. E. Jobe until the next morning, the appellant is responsible for the consequences of such negligence.

As to our fourth conclusion of fact (we suppose counsel mean the fifth, for their objections relate to that, and are not germane to the fourth), we reiterate, " that by reason of the delay in delivering the message to the appellee, his wife was prevented from reaching her father's bedside until after his death;" and supplement it by now finding, from the evidence, as a conclusion of fact, " that if the message had been delivered with due diligence, appellee's wife could and would have been present at her father's bedside before his death."

Now as to our conclusions of law:   It is complained of in the motion, that we erred in not sustaining appellant's third assignment of error, and in failing to reverse the case on account of the alleged error.   To have sustained this assignment, we would have to overturn an unbroken line of decisions of our Supreme Court, establishing the principle that mental anguish is an element of damages deemed to be within the contemplation of a telegraph company, as a natural and probable result of its neglect to deliver with reasonable dispatch a message such as appellant undertook to transmit in this case.   We do not think counsel for appellant ought to expect us to do this.   Its counsel admit in their brief, that " This assign-ment is not well taken, so long as this court adheres to the rule permit-ting recovery of damages for mental anguish in cases of this character." We adhere to this rule.

The sixth ground of appellant's motion attacks the opinion of the court for its failure to sustain appellant's fifth assignment of error.   As the matters to which that assignment relates are not fully set out in the opin-ion, we will here make a full statement of them.   Appellant alleged in its answer, " That in order to provide the public with telegraphic service

at Lockhart, it was necessary for defendant's lines and offices to be used in common with the Missouri, Kansas & Texas Railway Company's road business; that said railroad company ran freight and passenger trains over its road between Lockhart and San Marcos; that on the morning of August 2, 1891, appellant's agents at Lockhart were compelled for a short. time to surrender the use of said lines to the safely conducting and directing trains between said points, and to give their time to said trains. on arrival, so that it was unreasonable for them to give the whole of their time to the delivery of said message; but the interest of the public and its safety in connection with trains required a portion of their time,. whereby it may be, but it is not admitted, some little delay in discover-- ing the error and delivery of said message occurred; but that defendant says that it not only used due care, but used every possible diligence in. getting said message into hands of plaintiff, who, as defendant's agent at Lockhart believed, was entitled thereto.''

Appellant excepted to that '' portion of the answer which endeavors to. excuse its delay upon the ground that the wires were surrendered to the Missouri, Kansas & Texas Railway Company on the morning of August 2,. 1891, upon the ground that it was not sufficient in law to excuse delay in defendant.'' The District Court sustained the exception, and appel-- lant's fifth assignment of error questions the correctness of its holding.

In the Western Union Telegraph Company v. Rosentreter, 80 Texas,. 417, the court says: '' We do not think the law contemplates that a telegraph company, charged with the duty of faithfully serving the pub- lic to all reasonable extent, shall escape responsibility for its failure to. perform that duty by such a shallow pretense, after it has received the telegram and made a contract for its transmission.'' But in this case the answer does not even aver that it could not have reasonably discharged its duty both to the railway company and appellee. It says that appel- lant's agents on the morning of August 2, 1891, were compelled for a short time to surrender the use of its lines, etc. It does not even allege that the '' short time'' elapsed before the message was delivered that morning. But suppose that the inference should be indulged in that it did; what then is the consequence averred of its surrender for the '' short time?'' It is, '' so that it was unreasonable for them'' (the agents) '' to give the whole of their time to the delivery of said message.'' Of course it was. But the answer fails to allege that in order to deliver the mes- sage it would have been necessary for appellant's agents to devote the whole of the time to the delivery of the message. Such an allegation. could not have been truly made. A little messenger boy could have de- livered it in ten minutes. But the negligence for which appellant was. responsible was its failure to deliver the message on the night it arrived; and no showing of its inability to deliver it sooner next morning than it did would be a defense to such negligence.

We deem it unnecessary to add anything to our original opinion in regard to the stipulation in the contract, to the effect that appellant should not be liable for damages if appellee failed to present his claim therefor within sixty days after sending the message.    If Acts of Twenty-second Legislature, section 2, page 20, mean anything, the stipulation was absolutely void, and no notice was required as a condition precedent to suit.    The stipulation being void, the action of the court in ignoring it in its charge, complained of in appellant's twentieth assignment of error, was correct.

In considering the correctness of a charge, reference must be had to the pleadings and evidence.    The appellant in its answer sought to justify its failure to deliver the message with reasonable dispatch upon the ground, '' that by reason 'of the interruption of its lines or the working thereof, in some occult manner unknown to defendant, but to which the science and business of telegraphy is inevitably subject, and without any fault of defendant, its servants, or agents, said message became changed, etc.    It then introduced evidence to show that '' the interruption of its lines,'' etc., was caused by a heavy gale, sudden atmospheric change, and lightning.

The charge of the court relating to this part of the evidence is:    '' If you find from the evidence that defendant received and transmitted said message with ordinary care and dispatch, or in case it did not, that delay was not occasioned for the want of the use of proper care and diligence on its part, or on the part of the agents or its employes, but was occasioned by some action of the elements or other cause over which defendant could not have control, then you will find for defendant.''

It will be seen from a glance that this charge does not, as contended by appellant, '' limit its defense and right to excuse by vis major, or causes over which it could not possibly have control.''    It excuses appellant if it used '' ordinary care'' in transmitting the message.

It is strenuously contended, that this court erred in not sustaining appellant's twenty-second assignment of error, and in not reversing the judgment of the District Court for error in the second paragraph of its charge, and in failing to instruct the jury as requested in its special charge number 4.    The second paragraph of the charge complained of is as follows:

'' 2.    In passing upon the fact as to whether or not the defendant company was guilty of negligence in transmitting and delivering the dispatch in question, you may consider the hour at which it was delivered to the agent at Harwood, if you find that it was delivered at all, and the hour at which it was received by the plaintiff at Lockhart, and whether such time between receipt and delivery was reasonable time for a dispatch to pass over defendant's lines from one point to the other.    By the word

negligence as used here, is meant the absence in any case of such care and skill as under the circumstances ought reasonably be exercised."

Special charge number 4 asked by appellant is: " The defendant has the right to establish reasonable rules and regulations for the conduct of his business, and to establish reasonable office hours consistent with the reasonably sufficient service of the public; and if you find that the defendant had established such office hours at any or all of its offices through or by which said message had to be transmitted or handled in order for defendant to transmit and deliver the said message, and that the sender of said message had notice of such office hours, and sent such message subject to and with the understanding that it would probably be delayed by reason of such office hours, and that the delay, if any, in delivery thereof, or the delay, if any, in discovering the mistake in transmission, was occasioned by the intervention during the night while closed under such reasonable rule as to hours for keeping its office open and for closing the same, then any delay so occasioned is not chargeable as negligence to defendant. And if you find that during defendant's office hours, after the opening of its office for business, said message was delivered within a reasonable time, you will find for defendant."

There was no evidence to which this charge was applicable, or that would have made it proper for the court to have given it to the jury. The message was received by appellant's agent at Harwood for immediate transmission, and she forwarded it at once to San Antonio. So no delay could have been caused by its being delivered for transmission at Harwood after office hours.

It was received at San Antonio on the same day, at seventeen minutes past 6 o'clock p. m. There is no evidence tending to show that appellant's office at San Antonio is not open at all hours. The message reached San Marcos from San Antonio at seventeen minutes past 7 p. m. on same day. The evidence shows, from appellant's office hours there, that its office must have been open all night after the message was received; for Miss Wilson, one of its operators there, testified: " Mr. Collins, the manager of the office at San Marcos, goes on duty at 7 a. m., and retires at 7 p. m. My hours are from 7 p. m. to 7 a. m." The message was transmitted from San Marcos to Lockhart, and reached there at 8:20 p. m., August 1, 1891. The office hours at Lockhart are from 6 o'clock a. m. until the arrival of the last train, which is due at 9:15 p. m. So after the message was received at Lockhart, appellant had an hour, lacking five minutes, within office hours in which to deliver it. But the company's failure to deliver it with reasonable dispatch is not placed upon the ground that it did not have time within its office hours to do so, but upon its not being properly addressed. This we have already considered.

If, as is held by our Supreme Court in Western Union Telegraph Company v. Neel, 86 Texas, 368, a party who contracts with a telegraph com-

pany for the transmission of a message is bound by reasonable regulations established by it for the conduct of its business, it seems to us, when the regulation is the establishment of certain hours in which to transmit its business, that the company is alike bound by such regulation, and it is its duty to deliver the message within the time established, if it can reasonably do so. Contracts are mutually binding, and if the sender of a message is bound by the regulations of the company, the company is also bound by them. The company had nearly an hour of the time established by its regulation to make delivery of the message, and it made no effort whatever within that time to do so.

The seventh paragraph of the court's charge is not obnoxious to the objection urged against it in the twenty-eighth assignment of error. The charge expressly required the jury to find " that the message was sent for the purpose of enabling Mrs. Jobe to be with her father in his last hours of his life," and that this fact was known to the agent of said company, before it could find a verdict for plaintiff. If it was sent for that purpose, and the purpose was known to appellant's agent, there was no use in giving the agent notice of the purpose. Nor are we in conflict on this point with the decision of the Court of Civil Appeals of the First District in the case of Western Union Telegraph Company v. Kerr, 4 Texas Civil Appeals, 280. The facts in that case are essentially different from those in the case under consideration. In that case Dr. Henderson delivered to the agent of the company the following message for transmission: " To Dr. J. C. Jones, Gonzales, Texas: Come at once, if able, to see Dr. Kerr. (Signed) J. M. Henderson." The message was not delivered until next day. The wife of Dr. Kerr sued the company to recover compensation for mental anxiety and suspense experienced by herself as the result of the failure of Dr. Jones to arrive as she expected. There was no allegation nor proof that the agent of the company knew that Dr. Henderson was acting as the agent of Mrs. Kerr, or that the telegram was intended for her benefit. And the court properly held that neither the pleadings nor evidence showed a cause of action.

We do not believe that appellant has shown in its motion any error requiring a reversal of the judgment of the court below. Therefore the motion for rehearing is overruled.

*Motion overruled.*

Delivered February 7, 1894.

Justice FLY did not sit in this case.

Writ of error refused by Supreme Court.