## OCTOBER, 1918

## A. R. HORN v. WESTERN UNION TELEGRAPH COMPANY.

### No. 2475. Decided April 25, 1917, October 17, 1918.

**1.—Telegraph—Agency—Evidence.**

A death message was delivered to the night ticket clerk of a railway at its office also occupied by a telegraph company, which maintained no night operator or service, who accepted pay for its transmission, hung it on the hook of the telegraph company's operator, promised its prompt transmission by him in the morning, and was notified by the sender's agent of the relationship of the parties and for whose benefit the message was sent. Held, that notice of such facts need not necessarily be conveyed by the message itself, but may be given independent thereof; that under the evidence here considered there was not, in law, an absence of proof that the person receiving the message was acting in so doing as the agent of the telegraph company, and such notice to him notice to the company. (Pp. 231, 232.)

**2.—Mental Suffering.**

Mental suffering from failure to obtain the presence of a sister at the funeral of one's child may be inferred from the kinship and past relations of such persons. (Pp. 232, 233.)

**3.—Telegraph—Office Hours—Agency—Contract.**

Under evidence here considered, it was a question of fact for the jury whether a railway ticket agent, receiving a message at night at the office of a telegraph company, and promising that it should be transmitted in the morning at an earlier time than the office hours fixed by the company, it not being a night office, was acting, in making such promise within the apparent scope

of authority conferred on him by the telegraph company, and whether the message was delivered for transmission in reliance on such promise.    (P. 234.)

Error to the Court of Civil Appeals for the Sixth District, in an appeal from Hopkins County.

Horn sued the telegraph company and the latter appealed from a judgment in his favor.    On reversal and remand Horn obtained a writ of error.

*R. D. Allen,* for plaintiff in error.—Mental suffering from sister's absence inferred from blood relationship.    Western Union Tel. Co. v. Coffin, 88 Texas, 94; Western U. Tel. Co. v. Simmons, 75 S. W., 822; Western U. Tel. Co. v. Porter, 26 S. W., 866; Tel. Co. v. Adams, 12 S. W., 857; Potts v. Western U. Tel. Co., 18 S. W., 604, 74 S. W., 751; Western U. Tel. Co. v. Lydon, 18 S. W., 701; Western U. Tel. Co. v. Stiles, 34 S. W., 438.

The proof shows Knowles held out as agent of the company.    Pullman Palace Car Co. v. Nelson, 54 S. W., 624; Gulf, C. & S. F. Ry. Co. v. Moorman, 46 S. W., 662; Missouri Pac. Ry. Co. v. Simons & McCarty, 6 Texas Civ. App., 621; Western U. Tel. Co. v. Erwin, 147 S. W., 607; Cyclopedia of Law, vol. 31, 1219, and notes; Huffcut on Agency, 2nd ed., 66; Current Law, vol. 7, p. 80; id., 77, 76, 62 and 64; Am. & Eng. Ency. of Law, vol. 1, pp. 959, 960.

*N. L. Lindsey (Geo. H. Fearons* of counsel), for defendant in error.— Where it does not appear at the time of making the contract, as in this case, that the company had notice that the special purpose for which the message was sent was to secure the addressee's presence in order to console the sender, the law will not presume suffering in such a case as being in contemplation of the parties, or more than that the message was sent for the benefit of the addressee solely.    Telegraph Co. v. Birchfield, 38 S. W., 635.

There being no evidence tending to show that John Knowles was the agent of or authorized to act for the defendant in receiving the message which it is claimed he did receive, and which is the subject of this suit, it was error for the court to charge the jury as he did, as the court's charge in said respect assumes that John Knowles was the agent of and was authorized to act for the defendant in receiving the message.

MR. JUSTICE YANTIS delivered the opinion of the court.

The plaintiff in error, A. R. Horn, recovered a judgment against the defendant in error, the Western Union Telegraph Company, for the alleged failure to promptly deliver the following telegram:

"Mount Vernon, Texas, May 16, 1910.

Sam Smith, 1311 Grove Street, N. Fort Worth, Texas.

Bill Horn baby died last night, ten thirty.  Come at once.

J. W. Condrey."

It was alleged that Mrs. Sam Smith, the wife of the addressee of the telegram, was the sister of Mrs. A. R. (Bill) Horn, and that the message was sent by Condrey at the request of A. R. Horn, for the benefit of his said wife, because she desired her sister's presence with her at the funeral of her baby; and that Mrs. Horn suffered mental distress as a result of the failure of Mrs. Smith to lend her presence at the funeral, which failure to so attend was caused by the negligent failure of the defendant to promptly transmit and deliver said message. The trial was had in the District Court of Hopkins County. From a verdict in favor of the plaintiff in error the defendant in error prosecuted an appeal to the Court of Civil Appeals for the Sixth District at Texarkana. That court reversed and remanded the cause. 149 S. W., 557. A writ of error was granted by this court on the petition of plaintiff in error.

We are of opinion that the Court of Civil Appeals erred in holding that there was no evidence to show that John Knowles, who received the telegram for transmission from J. W. Condrey, was the agent of the Western Union Telegraph Company. We think there is evidence tending to show that John Knowles, though not an employe of the defendant in error, had authority to represent the Western Union Telegraph Company in receiving the message and in accepting the pay, as he did, in its behalf to render the service of promptly transmitting and delivering the message.

The evidence shows that a man named Black was the regular agent at Mount Vernon for the defendant in error; that he had very little work to do for them, few Western Union messages being sent from Mount Vernon; that he was also an agent of the St. Louis Southwestern Railway Company at said place, and a portion of his time was employed in discharging his duties as such railway agent; that his office was in the railway depot; that two other railway agents, the day agent and the night agent, occupied the same office; that the railway company had a telegraph instrument in said office which it used exclusively in its own behalf in transmitting and receiving messages directing the operations of its trains; that the telegraph company also had its own instrument for use in the sending and receiving messages in the conduct of its own business; that the two instruments were side by side, only a few inches apart; that there was some kind of a contract between the railway company and the telegraph company relating to the interchange of services by their respective employes; that the telegraph company kept a hook on which to hang the messages left with it for transmission; that it had been a custom for many years, in the absence of the telegraph company's agent at night, for the railway agent to receive the messages for transmission by the telegraph agent when he should come upon duty for the telegraph company the following morning, when he would send them; it was also a custom for the railway agent himself, occasionally to send such messages as an accommodation, as the one in question was sent by the day agent of the railway company, while the regular telegraph agent was temporarily absent from the office, perhaps engaged

in work for the railway company. Condrey, in behalf of Smith, when he delivered the telegram to Knowles for transmission, explained its purpose to him and paid him twenty-five cents, the regular charge made by the telegraph company for sending such a message. Knowles hung the message on the telegraph company's hook, which was by it provided, and promised that the telegraph agent would send it the following morning, the message being received by him late at night. On the next day Knowles delivered the money which had been paid to him for the transmission of the telegram to Black, the agent of the telegraph company.

We think these circumstances constitute some evidence of probative force to the effect that Knowles had the limited authority to receive, in behalf of the telegraph company, the message for transmission, and to accept as notice to the company the statement of Condrey as to the purpose of sending the message. We therefore are of the opinion that the Court of Civil Appeals erred in holding there was no evidence that Knowles was the agent of the telegraph company. The telegram upon its face does not convey to the telegraph company any notice that it was intended for the benefit of Mrs. Smith. If we look alone to the terms of the telegram the defendant in error would not be liable for the lack of such notice. Western U. Tel. Co. v. Luck, 91 Texas, 178, 66 Am. St., 869, 41 S. W., 469. But such notice may be given independent of the message as effectively as if imparted by the very terms of the message. Herring v. Western U. Tel. Co., 185 S. W., 293, 127 S. W., 882, 60 Texas Civ. App., 5; Western U. Tel. Co. v. Coffin, 88 Texas, 94, 30 S. W., 896; Western U. Tel. Co. v. Bell, 90 S. W., 714; Western U. Tel. Co. v. Hidalgo, 99 S. W., 426; Western U. Tel. Co. v. Russell, 31 S. W., 698. The evidence in this case tends to show that the telegraph company had notice from Condrey, the agent of Smith, in sending the telegram, that Mrs. Smith was the beneficiary of the telegram. Condrey testified that when he gave the message to Knowles, the company's receiving agent, he told him, "I want to be sure so Mrs. Smith will be sure to come on that train." "I want that message to get to her in time for her to take that train, because Mrs. Horn wants her sister to be at the burial." "I told this agent that Mr. Horn instructed me to tell him that Mrs. Smith was a sister of Horn's wife, and that she wanted Mrs. Smith to be at the burial of his child." We think this is evidence tending to show that the telegram was being sent for the benefit of Mrs. Horn, from which it could be reasonably contemplated that Mrs. Horn would probably suffer mental distress from a failure of Mrs. Smith to attend the burial.

We think the contention that Horn is not entitled to recover for his wife's mental anguish which resulted to her on account of the absence of her sister at the burial is without merit, and should be overruled. If such mental anguish was proximately caused by the negligence of the defendant in error in failing to promptly deliver the message, we can see no good reason for denying a recovery, where the telegraph com-

pany had notice that such injury to her feelings might result from a negligent breach of the contract. Western U. Tel. Co. v. Simmons, 93 S. W., 688; Western Union Tel. Co. v. Tom Tucker, decided by this court at its present term (108 Texas, 371, 194 S. W., 130).

We think the Court of Civil Appeals erred in holding that there was no evidence of damage to Mrs. Horn in the failure of her sister to attend the funeral. It is true that the evidence of such damage is very briefly stated, but it is some evidence from which the jury could infer that some damage resulted. The only evidence that mental anguish resulted to Mrs. Horn from the absence of Mrs. Smith at the funeral was that they were sisters, and had been together all their lives until they were married, and that they were very dear to one another. But we think this is evidence of some probative force from which the jury would be privileged to infer that injury to Mrs. Horn's feelings resulted. In Western U. Tel. Co. v. Coffin, 88 Texas, 94, 30 S. W., 896, this court, speaking through Mr. Justice Brown, said, "From the fact of blood relationship, if it exists, a jury may, without other proof, infer that mental anguish was occasioned by the failure to be present at the bedside of the sick, or at the funeral of the deceased relative." We think this holding is sound, whether applied in favor of the sender who claims damage to himself for the failure of a blood relative to attend him in time of sickness or death in his family, or applied in favor of the sendee for failure to attend the sickness or death of a blood relative.

In section 5 of the main charge the court directed the jury that if they believed John Knowles "in receiving the message in controversy transacted and agreed with J. W. Condrey to transmit said message to Sam Smith by 6:30 or 7 o'clock on the 16th day of May, 1910, in time for the sister of plaintiff's wife to arrive at the burial of the child of Bill Horn, as alleged in the plaintiff's petition," etc., etc., to find in favor of the plaintiff. In the state of the evidence we think this charge was erroneous. Witnesses had testified in behalf of the defendant in error that the telegraph company had established rules and regulations for office hours in the town of Mount Vernon, and that under such rules and regulations the telegraph office was closed at night and until 8 o'clock in the morning. The defendant in error had a right to have the jury to pass upon the reasonableness of the office hours so established, as a complete defense to the charge of negligence as to not sending the telegram on the morning in question at 6:30 or 7 o'clock, or at any hour earlier than 8 o'clock. The effect of the charge in question was to deny such defense to the defendant in error, and to hold it guilty of negligence in failing to comply with the agreement which Condrey made with Knowles, according to the former's testimony, to send the message by 6:30 or 7 o'clock on the 16th day of May, 1910. Knowles had no authority to change the regulation if it had been established, and was a reasonable regulation. And if he agreed so to do it would not be binding upon the telegraph company. This error requires a reversal of the judgment of the District Court. Accordingly the decision

of the Court of Civil Appeals to the effect that the plaintiff in error was not entitled to recover under the evidence should be held to be erroneous, while its judgment reversing and remanding the judgment of the District Court for the error in the charge indicated herein should be affirmed, and it is so ordered.

Opinion rendered April 25, 1917.

### ON MOTION FOR REHEARING.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Plaintiff in error presents a motion for a written opinion, stating the grounds on which his motion for rehearing was heretofore overruled. We have concluded to grant the motion in order to avoid the possibility of misconstruction of the original opinion on the new trial we have ordered.

As clearly stated in Justice Yantis' opinion, it was error, in the state of the evidence, for the trial court to direct a verdict for plaintiff on the findings, first, that Knowles was authorized to receive a message for transmission by another on the following day; second, that Knowles agreed to transmit the message to the addressee by 6:30 or 7 o'clock of the following day; and, third, that the failure to transmit and deliver the message was the cause of the absence of the sister of plaintiff's wife from the burial, and that such absence caused plaintiff's wife to suffer mental pain and anguish. Before plaintiff was entitled to recover it was also necessary for the jury to find: first, that the agreement to transmit the message by 6:30 or 7 o'clock next day was within the scope of the apparent authority of Knowles from the telegraph company, and, second, that the message was sent in reliance on such authority and agreement. While the evidence would have authorized the two last mentioned findings, it was not conclusive, and no other order was proper save to remand the case to determine the questions of fact.

The statement in the opinion that if Knowles made the agreement to send the message by 6:30 or 7 o'clock the next day, "it would not be binding upon the telegraph company," must be construed as meaning that such agreement alone could not bind the company. But that statement is not to be construed as a departure from the elementary principle in the law of agency that the principal is bound by the act of another person, when he holds such person out as possessing authority to perform the act in his behalf, provided that he who dealt with the agent relied on his apparent authority. This principle has been applied in this State to facts similar to those recited in the original opinion, Western U. Tel. Co. v. Erwin, 147 S. W., 608 (1), and is too well settled to warrant further discussion.

Let the case, as heretofore remanded, be disposed of in the trial court in accordance with the original opinion, and as that opinion is herein construed.

Opinion rendered October 17, 1918.      *Reversed and remanded.*