WESTERN UNION TELEGRAPH CO. v. BARRETT et al. (No. 2019.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 19, 1918. Rehearing Denied Nov. 28, 1918.)

1. TELEGRAPHS AND TELEPHONES ☞37(9)— INTEREST OF SENDER—NOTICE.

It did not appear from telegram reading "Ruth is not expected to live unless change in condition," or from telegram reading, "Ruth very bad. Can't live long," that either was sent for the benefit of the sender.

2. TELEGRAPHS AND TELEPHONES ☞65(1)— ACTION FOR DAMAGES—PLEADING.

In action by plaintiff for damages due to failure to promptly deliver to her son telegram with reference to serious condition of plaintiff's

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

daughter, the fact that the company had notice that the telegram was sent for benefit of plaintiff sender *held* to sufficiently appear from allegations of petition.

3. PLEADING ⊕⚬406(7) — AMBIGUOUS AVERMENTS—CONSTRUCTION IN ABSENCE OF SPECIAL EXCEPTION.

Although averment that purpose of sending telegram to son announcing serious illness of his sister "was to notify her brother of her condition so that he might come to her immediately" was ambiguous, where it was not excepted to, it was permissible to construe averment to mean that plaintiff's purpose was to have son come immediately.

4. TELEGRAPHS AND TELEPHONES ⊕⚬66(4)—INTEREST OF SENDER—NOTICE—EVIDENCE.

In action by plaintiff for damages due to failure to promptly deliver to her son a telegram with reference to serious condition of plaintiff's daughter, testimony *held* sufficient to charge defendant with notice that plaintiff sender had an interest in prompt transmission and delivery.

Appeal from District Court, Franklin County; J. A. Ward, Judge.

Suit by Mrs. T. J. Barrett and another against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Chas. S. Todd, of Texarkana, and Albert T. Benedict, of New York City, for appellant.

Wilkinson & Davidson, of Mt. Vernon, for appellees.

WILLSON, C. J. On October 13, 1917, and during several days immediately prior to that date, Mrs. Ruth Ellis, who resided in Omaha, was seriously sick at the home of her mother, appellee Mrs. T. J. Barrett, in Mt. Vernon. Willis Morgan, son of Mrs. Barrett and brother of Mrs. Ellis, was a soldier training at Camp Travis, San Antonio. At 12:40 o'clock of the afternoon of said October 13th, a message as follows was delivered to appellant at Mt. Vernon for transmission to San Antonio:

"Willis Morgan, Co. I, 359 Infy., Camp Travis, San Antonio, Texas.—Ruth is not expected to live unless change in condition. [Signed] Mrs. T. J. Barrett."

At 7:30 o'clock of said afternoon another message, as follows, was delivered to appellant at Mt. Vernon for transmission to San Antonio:

"To Willis Morgan, Camp Travis, Co. I, 359 Inft., San Antonio, Texas.—Ruth very bad. Can't live long. [Signed] Mrs. Barrett."

Mrs. Ellis died at 9 o'clock of the evening of said October 13th. Her remains were held at Mrs. Barrett's home in Mt. Vernon until 2:35 of the afternoon of October 14, 1917, when same were shipped to Omaha for burial.

Both the messages set out above were promptly transmitted from Mt. Vernon to San Antonio, but the one last set out was never delivered to Willis Morgan; and the other one, though received at San Antonio at 1:07 p. m. of said October 13th, was not delivered to him until about noon of October 14th, notwithstanding the fact that he was in barracks not over 75 or 100 yards from appellant's office and could have been found easily. Had the first of the two telegrams been promptly delivered to Morgan, he could and would have taken a train which left San Antonio at 6:35 p. m., or one which left there at 9 p. m., of said October 13th, and would have reached Mt. Vernon the afternoon of October 14th in time to have accompanied his mother and the remains of his sister to Omaha. Because of the negligent delay of appellant in delivering the first of the two telegrams to him, Morgan did not leave San Antonio until 6:35 of the afternoon of said October 14th, and did not reach Mt. Vernon until about 2:35 of the afternoon of October 15th which was after the time when his sister's remains were buried. This suit was by Mrs. Barrett joined by her husband. The trial was to the court without a jury, and resulted in a judgment in Mrs. Barrett's favor for $500. Among other findings of fact made by the court were the following:

"4. I find that, at the time of the delivery of the first above-mentioned message to the defendant's agent at Mt. Vernon by the plaintiff Mrs. T. J. Barrett, said delivery was made through and by Mrs. D. H. Holley, and that when Mrs. Holley delivered the message to the agent she advised the agent of defendant company that Mrs. Barrett wanted the said message sent at once and that Mrs. Barrett's daughter was in a dying condition and they wanted Willis Morgan, Mrs. Barrett's son, to come home at once; and further told him that Mrs. Barrett wanted her son Willis Morgan to come home.

"5. I find that the message was sent for the benefit of Mrs. Barrett, the plaintiff herein, that she might have her son with her to console and comfort her at her daughter's death and funeral, and that the defendant company was so notified when the message was delivered to the defendant's agent by Mrs. Holley, acting for Mrs. T. J. Barrett, and that the defendant company was fully advised of the importance of prompt delivery of the said message for the use and benefit of Mrs. T. J. Barrett."

In her petition appellee alleged:

"1. The purpose of sending the message was to notify her (Ruth Ellis') brother of her condition so that he might come to her immediately."

"3. The agents of the defendant were fully informed as to the urgency of the sending and delivery of the said messages, and of all the circumstances requiring the speedy transmission and delivery thereof, and the defendant was fully advised of the necessity of a speedy transmission and delivery of said message."

"6. That plaintiff expected her son to come

at once upon receipt of the message, which he would have done," etc.

"7. That by reason of the negligence of the defendant the plaintiff was denied the privilege of having her son with her in her grief, and was denied the privilege of his consolation and presence with her at the funeral, all of which caused her to suffer great mental anguish and pain to her great damage in the sum of $2,500."

It is not contended (and could not be without ignoring the ruling in Horn v. Tel. Co. [Sup.] 194 S. W. 386, and other cases decided by the courts of this state) that appellant was not liable as determined by the judgment if the first of the two telegrams set out in the statement above was sent for Mrs. Barrett's benefit and appellant had notice of the fact at the time same was delivered to it for transmission to Morgan. The contention is that to authorize the judgment it must have appeared from both the pleadings and the testimony, and did not appear from either, that the message was sent for Mrs. Barrett's benefit and that appellant had notice of the fact. Careful consideration of the record has convinced us that it did sufficiently so appear, and that the contention therefor should be overruled.

[1-3] Each of the messages was set out in full in the petition, but it must be conceded that, when interpreted with reference to rulings made by the courts (Tel. Co. v. Luck, 91 Tex. 178, 41 S. W. 469, 66 Am. St. Rep. 869; Tel. Co. v. Bell, 90 S. W. 714), it did not appear from the language of either of them that it was sent for appellee's benefit. However, we think that fact, and that appellant had notice of it, sufficiently appeared from the allegations in paragraphs 1 and 3 of the petition, set out in the statement above. While the meaning of the averments in paragraph 1 was ambiguous, they were not excepted to on that ground. Hence it was permissible to construe the averments to mean that Mrs. Barrett's purpose in sending the message was to have her son "come to her immediately" and by his presence encourage and console her in her sorrow. The allegation in paragraph 3 of the petition that appellant was "fully informed as to the urgency of the sending and delivery of the said messages, and of all the circumstances requiring the speedy transmission and delivery thereof," was sufficient, we think, to charge that appellant had notice that Mrs. Barrett's purpose in sending the telegram was as alleged in paragraph 1. Tel. Co. v. Hidalgo, 99 S. W. 426. In the case cited, the message was sent to Hidalgo for the benefit of his wife. In support of a general demurrer to the petition, it was urged that there was nothing therein or in the message to apprise the company that Hidalgo had a wife and that the object of the message "was to afford information upon which she was expected to

act." In disposing of the contention, the court said:

"There is contained in the petition an allegation that the sender of the message 'then and there informed said agent of the facts and circumstances requiring the speedy transmission thereof.' This, though general, and subject to special demurrer, was comprehensive and sufficient to admit proof of any information given the agent touching the urgency of the message. If the defendant desired the information and circumstances set forth, a special exception should have been employed."

[4] The testimony relied upon to show that the message was sent for Mrs. Barrett's benefit, and that appellant knew it, was that of the witness Mrs. Holley (who acted for Mrs. Barrett in arranging with appellant's agent to send the first one of the two messages) as follows:

"I told him (appellant's agent) why she (Mrs. Barrett) wanted it sent; that the purpose was that this boy's (Morgan's) sister was dying and they wanted him to come home at once. I told the agent that Morgan's sister was in a dying condition and his mother wanted him to come home. I told him Mrs. Barrett wanted her son to come right home on account of the serious condition of her daughter."

We think the testimony was sufficient to charge appellant with notice of the fact that Mrs. Barrett had an interest in the prompt transmission and delivery of the message and would suffer as the jury found she did, if delay in delivering it should result in the failure of her son to come to her immediately. Tel. Co. v. Bell, 90 S. W. 714; Tel. Co. v. Hankins, 110 S. W. 543. In the first of the cases cited, the message was from a sister to her brother, advising him that their mother was dying, and asking him to "come at once." The sister, the sender of the message, was the plaintiff. She testified that she told the company's agent, when she arranged with him to send the message, that Jernigan was her only brother. In disposing of a contention made by the company that it did not appear that the sister sent the telegram for her own benefit, the court said:

"We are of the opinion that the information given the telegraph company by defendant in error outside of the message, taken in connection with that conveyed by the message, tended to give it notice that the message was intended to summon H. A. Jernigan, the brother of defendant in error, to be present at the funeral and burial of their mother, for the purpose of sympathizing with and consoling the defendant in error in her distress during such funeral and burial."

The only difference between that case and this one, so far as the question made is concerned, was, it seems, that in that one notice to the company that the sender wished the addressee to come to her was given by words in the message, while in this one it was given verbally.

The judgment is affirmed.