## WESTERN UNION TEL. CO. v. LANE.
### No. 5312.

Court of Civil Appeals of Texas. Amarillo.
June 9, 1941.

Francis R. Stark, of New York City, and A. A. Lumpkin and H. H. Cooper, both of Amarillo, for appellant.

F. H. McGregor and John H. Merchant, both of Amarillo, and R. E. McLaughlin, of Dumas, for appellee.

STOKES, Justice.

This suit was filed by appellee, O. P. Lane, against appellant in which appellee

sought to recover damages alleged to have accrued to him on account of the failure of appellant promptly to deliver an urgent telegram announcing the serious illness of John Caldwell, who was the father of appellee's wife. Appellee and his wife resided at Dumas, in Moore County, and John Caldwell was a resident of Meridian, in Bosque County. On October 9, 1939, at 7:05 o'clock P.M. Ray Harvey, a grandson of John Caldwell, delivered to the agent of appellant at Meridian a telegram addressed to appellee at Dumas which said: "Come at once Papa is at point of death." The original telegram was not delivered, but a duplicate of it was delivered to appellee at Dumas on October 11th at about ten o'clock in the morning. Late that afternoon Mrs. Lane went from Dumas to Amarillo where, about nine o'clock that evening, she took the train for Meridian and arrived there near noon the next day, October 12th. Mr. Caldwell died about eight o'clock on the morning of October 12th and, when Mrs. Lane arrived, the remains were at the funeral home being prepared for burial.

Appellee's suit was for damages which he alleged were suffered by Mrs. Lane from mental anguish on account of the alleged negligence of appellant in failing promptly to deliver the telegram by reason of which he alleged that Mrs. Lane was denied the comfort and consolation of being at the bedside of her greatly beloved father while he was still alive which, he alleged, resulted in great mental pain, nervous shock, disappointment, grief and mental anguish.

The case was submitted to a jury upon special issues and in answer thereto the jury found that the agent of appellant at Meridian received the telegram and agreed for a valuable consideration that appellant would use ordinary care to deliver the same to appellee at Dumas; that Ray Harvey, the sender of the telegram, at the time he delivered the same to the receiving agent or immediately prior thereto, informed the agent that Mrs. Lane, the wife of appellee, was the daughter of John Caldwell; that appellant did not exercise ordinary care in the transmission and delivery of the telegram; that appellant could, by the exercise of ordinary care, have transmitted and delivered the same to appellee on October 10, 1939; that, upon receipt of the telegram, appellee would have communicated its contents to Mrs. Lane and that she could and would have left Dumas on the 10th of October and reached her father before his death if the telegram had been delivered on that date; that Mrs. Lane suffered damages to the extent of $1,250 by reason of mental anguish as defined in the court's charge in not being at her father's bedside before his death.

Based upon the verdict of the jury the court entered judgment in favor of appellee for the sum of $1,250 and, its motion for a new trial being overruled, appellant has perfected an appeal to this court.

The first contention presented by appellant relates to the admissibility of a portion of the testimony of Ray Harvey, the grandson of John Caldwell, who sent the telegram. He was asked by counsel for appellee if, from the conversation he had with the receiving agent at Meridian, he learned that the agent was acquainted with the family of John Caldwell, which he answered in the affirmative. Appellant objected to the question and answer as being irrelevant and immaterial and its counsel stated to the court that the mere fact the agent might have knowledge of some independent transaction was not admissible. It is a well established general rule that knowledge of an agent not acquired in the performance of the duties of his employment cannot be imputed to the principal. Western Union Tel. Co. v. Williams, Tex.Civ.App., 283 S.W. 604. The rule applies to the failure of the agent to recall facts which he knew but were not present in his mind at the time. We do not think, however, that the testimony complained of comes within the rule which appellant seeks to invoke. The witness was merely asked if from the conversation he had with the agent concerning the transmission of the telegram, the witness learned the agent was acquainted with the family of John Caldwell. Manifestly, if the agent was acquainted with the family, no purpose could have been served by giving to him specific information which he already had; and, if Ray Harvey knew of such acquaintance, or ascertained it from the conversation he had with the agent, it could not be said that Ray was under the duty to give the agent detailed and specific information concerning the family. Western Union Tel. Co. v. Jobe, 6 Tex.Civ.App. 403, 25 S.W. 168, 1036. Furthermore, no harm could have resulted to appellant by the witness being permitted to answer the question

because the agent himself later testified that he had known John Caldwell for some seventeen years and that he knew one of the boys. He further testified that John Caldwell was well known in the community and that, when the telegram was delivered to him, Ray Harvey told him who Ray's grandfather was. This testimony was admitted without objection and placed before the jury the details concerning the acquaintance of the agent with the family. We fail, therefore, to observe any merit in this contention.

■ The next contention presented by appellant is that, the message itself not revealing to appellant that it was intended for appellee's wife, it was encumbent upon appellee to show that appellant had such notice. It is true that appellee's wife was not mentioned in the telegram and it was addressed to her husband, O. P. Lane. Ray Harvey testified, however, that, in the conversation concerning the telegram that was had between him and Mr. Sayles, the agent of appellant, at the time it was delivered to the latter for transmission, he told the agent that his grandfather, John Caldwell, was in a very serious condition and he wanted to "get hold of all his children; I told him who they were." He said in this connection that he told Mr. Sayles that Mrs. Lane was one of the children. Furthermore, Mr. Sayles himself testified that, in the conversation concerning the telegram, Ray Harvey told him he wanted to send some telegrams to some of the close relatives of John Caldwell. The jury found that Harvey informed the agent that Mrs. Lane, the wife of appellee, was the daughter of John Caldwell of Meridian. They further found that both appellee and his wife were at Dumas on the 10th of October, 1939, and that appellee would have communicated the contents of the telegram to Mrs. Lane upon its receipt by him. We think the testimony is amply sufficient to show that appellant's agent at Meridian was fully informed, and was aware of the purpose of the telegram and that it was intended for appellee's wife. If there should be any doubt as to this, however, the telegram itself related to the desperate condition of John Caldwell, even going to the extent of stating that he was at the point of death. This was certainly sufficient to put the agent of appellant upon inquiry and if he desired more definite information relative to its purpose, he should, and no doubt would, have made inquiry of Ray Harvey at the time. The testimony as a whole indicates, however, that the agent was fully satisfied as to all this by the information which he had. At any rate it is evident that he could have learned everything that was necessary in regard to the matter by inquiry and, if he was not already in possession of such information, appellant is charged with such information as he would have acquired if he had made such inquiry. Herring v. Western Union Telegraph Co., 108 Tex. 77, 185 S.W. 293. We do not agree with appellant in this contention and its assignments of error in reference to the matter here discussed will be overruled.

■ The next contention relates to the basis of appellee's claim for damages, appellant contending that, according to his petition, appellee seeks damages because his wife was, through appellant's negligence, deprived of rendering comfort and consolation to her father during the last moments of his life; while the evidence shows that her father was unconscious for two days before his death. The testimony shows that, even if the telegram had been promptly delivered, Mrs. Lane could not have reached Meridian before sometime during the day of October 11th and that her father died on the morning of the 12th. Mrs. Lane testified that the deceased was unconscious most of the time for two days before his death. She, therefore, would not be entitled to damages on account of being deprived of the privilege of rendering comfort and consolation to her father during the time she would have been able to be with him prior to his death if the telegram had been promptly delivered, for the simple reason that, in the nature of things, she could not have rendered comfort and consolation to him while he was in an unconscious condition. We think, however, that appellant's contention here is based upon an erroneous interpretation of appellee's petition. While the petition does allege that, if she had received the telegram within a reasonable time, she could and would have been present and rendered the comfort and consolation that only a favorite child could give a parent during the last moments of mortal life, it goes further and alleges that by reason of appellant's negligence, plaintiff's wife was denied the comfort and consolation of being present at the bedside of her greatly beloved father while he was still alive and that, if the telegram had been promptly transmitted and delivered she could and would have reached Meridian in

time to be able to see her father alive, and that she would have been afforded the comfort and consolation of seeing him alive. It has been held in many cases by our courts that damages may be recovered for mental anguish occasioned by the negligence of a telegraph company in delivering a telegram such as the one here involved which deprives the plaintiff of the privilege of being present while a close relative was still alive. Indeed, our courts uphold judgments for damages in such cases even where the claim is based upon allegation and proof that the plaintiff, through the negligence alleged, was deprived only of the privilege of being present at the funeral of a near relative. Western Union Tel. Co. v. Hughey, 55 Tex. Civ.App. 403, 118 S.W. 1130; Western Union Tel. Co. v. Ridenour, 35 Tex.Civ. App. 574, 80 S.W. 1030; Western Union Tel. Co. v. Lydon, 82 Tex. 364, 18 S.W. 701; Western Union Tel. Co. v. Bruner, Tex. Sup., 19 S.W. 149; Horn v. Western Union Tel. Co., 109 Tex. 229, 194 S.W. 386, 205 S.W. 831.

Under its fourth contention appellant asserts that appellee was not entitled to recover more than nominal damages under his pleading and the evidence because the evidence showed that his wife suffered only fear, worry and disappointment which does not constitute mental anguish. As we have already said, the pleading is sufficiently comprehensive to form the basis of the judgment rendered by the court. As to the testimony, Mrs. Lane testified that the delay in receiving the message upset and worried her. She said she was afraid she would not reach Meridian before her father passed away; that she was worried, and when she did not arrive there before her father's death she was nervous and upset about it. She said that when she got there and found her father had died before she arrived it was almost more than she could stand. The court charged the jury that the term "mental anguish" meant that keen and poignant suffering caused from some great grief; hence mere disappointment, resentment or anger did not constitute mental anguish. No criticism is offered by appellant of this definition and we think it is the correct one. The jury found that Mrs. Lane suffered damages by reason of mental anguish, as defined in the court's charge, in not being at her father's bedside before his death. It was not necessary for appellee, by the testimony, to separate the grief suffered by his wife over the death of her father from the elements of grief, disappointment and worry which she suffered from being deprived of the privilege of being at her father's bedside during his last illness. It was for the jury to determine whether or not, under the testimony and the circumstances accompanying the entire transaction, Mrs. Lane suffered mental anguish. When the blood relationship is shown the jury may indulge an inference of mental anguish without specific proof and base their verdict upon their knowledge of human nature. Western Union Tel. Co. v. Chilson, Tex. Civ.App., 168 S.W. 878; Western Union Tel. Co. v. Adams, 75 Tex. 531, 12 S.W. 857, 6 L.R.A. 844, 16 Am.St.Rep. 920; Western Union Tel. Co. v. Bruner, Tex. Sup., 19 S.W. 149; Western Union Tel. Co. v. Alred, Tex.Civ.App., 4 S.W.2d 666; Western Union Tel. Co. v. Coffin, 88 Tex. 94, 30 S.W. 896.

Under the fifth and last contention made by appellant it is asserted that, under the circumstances shown by the testimony, the judgment is excessive and, in assessing such an amount in their verdict, it is manifest that the jury was actuated by passion and prejudice against appellant. We do not find anything in the record which indicates that the jury was actuated by passion, prejudice or any other unconventional emotions. Under the pleadings in the case and the wide discretion accorded the jury in estimating damages in such cases, they could have assessed the damages at a much greater sum and probably would have done so if passion and prejudice against appellant had existed in their minds when they were considering the case. We do not feel authorized arbitrarily to say that the amount awarded by the jury and adopted by the court in rendering the judgment was excessive.

We have carefully considered all of the contentions, assignments of error and propositions of law presented by appellant and, in our opinion, no reversible error is shown by any of them. The judgment of the court below will, therefore, be affirmed.